Lentz Estate.

Argued January 5, 1950. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Alfred L. Taxis, Jr.,* with him *William J. Grove* and *Grove & Taxis,* for Horace D. Lentz, appellant.

*William J. Moran, Jr.,* with him *J. B. Hillegass* and *Hillegass & Moran,* for Frances Edna Brooks Lentz et al., appellants.

*Frederick B. Smillie,* with him *Paul A. Davis, 4th, Carroll R. Wetzel, Barnes, Dechert, Price, Myers & Clark,* and *Smillie, Bean & Scirica,* for appellee.

OPINION BY Mr. Justice ALLEN M. STEARNE, March 20, 1950:

These are eight appeals from a final decree of the Orphans' Court of Montgomery County refusing to surcharge a corporate trustee for losses sustained upon the conversion of certain securities of the trust estate.

Testator died November 16, 1925, leaving a will dated October 25, 1922, duly probated, giving the residue of his estate to a trust company, in trust, inter alia, to pay his widow two-thirds of the net income for her support and that of their two named sons, and one-third to a named son by a former marriage. Upon the death of the widow, the entire income was directed to be paid, in equal shares, to the three sons until the youngest should attain the age of 21 years, when the corpus was distributable to testator's descendants per stirpes. The widow and the sons survived and are still living.

At the request of the widow the present interim account was filed by the trustee and audited.

One of the sons, Francis B. Lentz, was a minor at the date of the audit but reached his majority during this litigation. He was represented at the audit by a guardian ad litem. Children and a minor grandchild of the son LaFayette Lentz were joined. The same guardian and trustee ad litem was appointed for the minor grandchild and for all unascertained persons.

At the audit the widow, her two sons, and the guardian and trustee ad litem, sought a surcharge against the trustee because of alleged undue retention by the trustee of specified securities which, upon their sale, resulted in a large financial loss.

For the present purpose it will be unnecessary to recite in detail the securities involved and the amounts of the respective losses. It will suffice to state that by the award of the Orphans' Court on October 14, 1926, there was awarded to the trustee $1,495,791.54, composed of non legal bonds, stocks, securities and a small sum of cash. No account was thereafter filed for a period of 16 years. There are six items of securities in question: two of corporate bonds and four of corporate stock. The trustee sold these items in the period from October 6, 1939 to April 19, 1940. The claim for surcharge may be thus summarized:

| | | |
|---|---|---|
| Inventoried value, as awarded | $384,762.50 | |
| Sales price | 132,794.34 | $251,968.16 |
| | | |
| Income loss | | 201,574.53 |
| | | |
| Total ........................... | | $453,542.69 |

Appellants, however, claim a larger surcharge. They estimate that if the securities had been sold at proper times they would have realized ............... $450,830.66

The loss of income is estimated at........ 360,664.53

Amount of present claim for surcharge.. $811,495.19

Appellants contend that the actual and potential losses sustained were occasioned by the lack of prudence by the trustee under all the circumstances. Great reliance is placed upon the testimony of three of their witnesses—financial experts or investment counsellors. They testified in detail — supplemented by statistics, graphs, etc.—as to what securities, in their opinion, the trustee should have retained, sold or bought, and the periods of time within which the trustee should have acted.

The fifth item of the will provided: "I authorize and empower the executors of and trustee under this my Will, and the survivor of them and their successors, to retain any and all investments that may come to them as part of my estate for so long a time as in their best judgment may seem advisable and for the best interests of my estate, and at any time or times to sell, dispose of and make valid transfer of investments and reinvestments without application to any Court for an order to justify any rentention or sale of investments or reinvestments, and to invest the proceeds thereof from time to time in such securities as to such executors and

trustee may seem proper, either within or without the State of Pennsylvania, with due regard for the safety of the principal of my estate and a reasonable return of income therefrom, without confining such executors and trustee to what are known as legal investments, with continuing powers to such executors and trustee, and the survivor of them and their successors."

President Judge Holland held numerous hearings. He considered the evidence with meticulous attention and extraordinary patience. The record consists of 956 printed pages. He ruled that the test of a fiduciary's liability on the sale or retention of trust securities is common prudence, common skill and common caution; that failure so to exercise such prudence, skill and caution will not be excused because of testator's exemption concerning the fiduciary's discretionary sale or retention. This ruling was clearly correct. It is supported by numerous decisions of this Court, inter alia, *Hart's Estate (No. 1)*, 203 Pa. 480, 53 A. 364; *Stirling's Estate*, 342 Pa. 497, 21 A. 2d 72. Cf. *Casani's Estate*, 342 Pa. 468, 21 A. 2d 59; *Quinn's Estate*, 342 Pa. 509, 21 A. 2d 78; *Lewis' Estate*, 344 Pa. 586, 26 A. 2d 445; *Blish Trust*, 350 Pa. 311, 38 A. 2d 9. The auditing judge found as a fact, however, that the trustee had met the required standard. He stated that it was established by the evidence:

". . . that these investments, together with all trust portfolios, were considered daily by the research department of the trustee's trust department; that a special investment committee of the trust department met several times each week and considered the trust portfolio. Such investments as this committee thought warranted further consideration were taken not less than weekly to an investment committee of the board for its consideration and advice. These investments in question over the accounting period were considered no less than six hundred and seventy-nine times by these com-

mittees. William C. Tuttle, an officer of the accountant, testified as to the yearly times of examination and consideration of securities. They were examined and considered as follows:

"1926, thirty-five times; 1927, thirty-five times; 1928, fifty-three times; 1929, fifty-three times; 1930, forty-seven times; 1931, forty-one times; 1932, thirty-five times; 1933, twenty-seven times; 1934, forty-nine times; 1935, forty-nine times; 1936, sixty times; 1937, forty times; 1938, thirty-eight times; 1939, forty-four times; 1940, forty-eight times; 1941, fifty times, or as he counted it, a total of six hundred and seventy-nine times during the accounting period." As there was amply sufficient evidence to support this finding, it will not be disturbed: *Roberts Estate,* 350 Pa. 467, 39 A. 2d 592; *Dowman Estate,* 156 Pa. Superior Ct. 655, 41 A. 2d 339, and the cases therein cited.

It was the trustee—not the experts—who was granted the discretionary power to exercise its best judgment. The period from 1926 to 1940 was an extraordinary one in financial history. Many financial experts and experienced financiers were later found to have been mistaken in their views. Hindsight will never be permitted to be substituted for foresight. The learned auditing judge correctly ruled that under the discretionary power given to the trustee by testator, it must be established that the trustee failed to act with common prudence, common skill and common caution. Cf. *Kelch's Estate,* 318 Pa. 296, 298, 178 A. 129. But it was not proven to the satisfaction of Judge Holland that the trustee so failed in its duty. He was not required to accept the testimony of these witnesses or their conclusions: *Archer Estate,* 363 Pa. 534, 70 A. 2d 857, and the cases therein cited. Merely because the trust investments were not more diversified in the circumstances of this case, is no reason for the imposition of a surcharge. Diversification of trust investments has not been insisted upon in this

Commonwealth: *Elkin's Estate,* 325 Pa. 373, 376, 190 A. 650 (affirming 20 D. & C. 483, p. 488); *Saeger Estates,* 340 Pa. 73, 16 A. 2d 19.

The exclusion of certain exhibits and the limitation of further cross examination in this excessively lengthy and technical hearing were matters within the sound discretion of the hearing judge. Our examination of the record convinces us that the court did not abuse its discretion.

The printed record is unnecessarily voluminous. Apparently no attempt was made by counsel either to agree upon a diminution of the record, or to bring the matter to the attention of the court. See Rules 55 and 83 of this Court (amended to September 30, 1948). With reasonable exercise of good judgment it would appear that this large printing expense could have been considerably curtailed. Appeals Nos. 34, 81, 35, 83, 32 and 84 are dismissed. Two thirds of the entire cost of all appeals will be paid as follows: 2/3 (4/9) by appellant in Nos. 34 and 81 and the remaining 1/3 (2/9) portion equally between appellants in Nos. 35, 83, 32 and 84. Appeals Nos. 33 and 82 are likewise dismissed. The remaining one third (3/9) of the entire costs will be paid out of the corpus of the trust estate.

The decree is affirmed. Costs to be paid as above ordered.