## Losa Estate

*Philip R. McLaughlin,* for petitioner.
*Robert W. McWhinney,* for individual cotrustee.

BOYLE, P. J., July 21, 1953.—The trust assets in the case at bar consist wholly of common stocks. The exceptions filed to the decree of the hearing judge present the question whether the court has authority under section 949 (*b*) of the Fiduciaries Act of 1949 to direct a sale of part of the stocks held by two testamentary trustees when there is a dispute between them as to whether some of the stocks should be sold and the proceeds invested in securities which are authorized investments under the Fiduciaries Investment Act of 1949.

Decedent, Blaha J. Losa, died December 9, 1950. By his will he provided in part as follows:

"I give, devise and bequeath to Alice L. Kilday and the Peoples First National Bank & Trust Company, in trust, all my stocks, bonds and securities for the following uses and purposes to hold, invest and reinvest the same, to collect the income and after paying all expenses incidental to the management of the trust, to apply the income in the sole discretion of the trustees for the maintenance and education of my son, John William Losa and when my son, John William Losa, arrives at the age of twenty-one (21) to pay him the principal."

The common stocks which make up the trust estate came into the possession of the trustees under a decree of distribution entered October 9, 1951.

During the year following the award of the trust assets to them a dispute developed between the two trustees as to whether the continued holding of investments consisting entirely of common stocks was an exercise of due care and prudence. Attached to the petition filed by the corporate trustee are copies of letters exchanged by the two trustees defining their separate positions. The corporate trustee asserts that due care and prudence requires that at least one third of the common stocks be sold and the proceeds reinvested in authorized securities. The individual co-

trustee disagrees and asserts that the sale of any of the common stocks would not be an act of due care and prudence, would be contrary to the intention of testator and contrary to the best interests of the estate and the beneficiary.

On September 12, 1952, the corporate cotrustee presented its petition to the orphans' court praying that the individual trustee be directed to join in the sale of shares of common stocks comprising about four ninths of the assets of the trust estate. Petitioner avers, inter alia, ". . . that it is imperative that some portion of the securities as awarded to the trustees should be sold and reinvested in legal investments in order to provide a better investment balance for the trust funds and to reduce the vulnerability of the estate to market fluctuation and further avers that its proposal for the sale and reinvestment of a portion of said funds as outlined in its letter to Mrs. Kilday of April 23, 1952 is for the best interests of said trust estate."

An answer was filed by the individual cotrustee and the case came on to be heard.

On February 20, 1953, an order of court was entered requiring four shares American Gas & Electric common, two shares General Electric common, two shares Kresge (S. S. Co.) common, three shares Montgomery Ward Co. common, 16 shares Standard Oil—Indiana common, 18 shares Standard Oil—New Jersey common, 11 shares Texas Co. common, and seven shares Chesapeake & Ohio common to be sold and further providing that "The proceeds of said sales shall be invested in securities, other than common stocks, which qualify as legal investments under the Fiduciaries Investment Act of 1949."

The individual cotrustee filed exceptions to the order of court averring that the order of court is contrary to pertinent statutory provisions; is contrary to the best interests of the beneficiary of the trust; is con-

trary to the intent of testator; and that the order of court exceeds the authority vested in the orphans' court.

By the terms of decedent's will the trustees are *authorized* but not *directed* to "hold" the securities bequeathed by testator. As stated in Scott on Trusts, §230.1:

"Where he [the trustee] is authorized but not directed to retain the securities, it is within his discretion either to retain them or to dispose of them. In neither event will he incur any liability unless he is guilty of an abuse of discretion."

Section 14 of the Fiduciaries Investment Act of May 26, 1949, P. L. 1828 provides:

"A fiduciary may retain without liability for resulting loss any asset received in kind, even though it is not an authorized investment, provided he exercises due care and prudence in the disposition or retention of any such non-legal investment."

As held in Lentz Estate, 364 Pa. 304, 308, " . . . the test of a fiduciary's liability on the sale or retention of trust securities is common prudence, common skill and common caution; . . . failure so to exercise such prudence, skill and caution will not be excused because of testator's exemption concerning the fiduciary's discretionary sale or retention. This ruling was clearly correct. It is supported by numerous decisions of this Court," citing cases.

By the will of decedent the trustees in the case at bar are given no sole or absolute discretion in the matter of retention of nonlegal investments which came into their hands from the testamentary estate of decedent. Their right to retain the common stocks free of liability for loss in the event of a decline in prices must rest in the exercise by the trustees of "due care and prudence" as section 14 of the Fiduciaries Investment Act of 1949 provides.

In the case at bar the corporate trustee asserts that the exercise of due care and prudence and the best interests of the estate require that a portion of the common stocks in the trust estate be sold and the proceeds reinvested in investments authorized by the Fiduciaries Investment Act of 1949. The individual cotrustee disagrees and opposes the sale.

The position of the corporate cotrustee appears from the testimony of Roger P. Donner, one of its investment officers, who testified in part as follows:

"Q. Now, will you explain to the Court the results of your study of the list of securities in this estate; what criticisms, if any, you had and now have of the list as decreed, and your reasons for recommending the changes which are set forth in that letter of April 23?

"A. When I brought this trust to our trust investment committee for the initial review, the committee noted that the estate was completely in common stocks. Such a situation usually, unless there are compelling reasons to allow such a situation, would not be usually looked upon with favor by our trust investment committee. We feel that on the basis of two of the cardinal principles of trust investment, each account should have balance—that is, between fixed income securities, fluctuating income securities like common stocks, and diversification.

"On that basis it was noted that the fund was particularly heavy in oil stocks. Now, those oil stocks individually, in proper proportion, would represent to us no particular problem. Unfortunately, here representing 75 per cent of an account that is completely in common stocks, the committee thought that it would be advisable to reduce this concentration in oil stocks and reduce the over-all stock proportion of the fund and switch a certain amount of the proceeds of those sales into securities which have fixed income stability, such as bonds and preferred stocks.

"Q. This trust, which is a testamentary trust, expires on the twenty-first birthday of Mr. Losa's son, which is October 24, 1955. Now, does the length of time during which the trust will remain in effect have any bearing upon your decision with respect to the investments to be held in the trust?

"A. That is an important, relevant factor. If this trust were to run for, say, 20 or 25 years, we would treat it differently from what we have to treat it on the basis of its short duration here. In other words, we have only three or four years in which to expect the economic conditions to reflect the market value of the fund. In other words, we can just be unfortunate enough in a short duration trust such as this to be forced to distribute at a time when the general market is low, and that is very embarrassing to the trustee.

"Q. You mean the time of distribution might come at a low point?

"A. Yes. We felt here some part of this fund should be in dollars—should be in dollars which we could distribute in three years, and since we have such a short time in which to acquire those dollars, we thought that some part of the fund—at least one third of the fund—should be in nonfluctuating, fixed-income investments.

"Q. Now, what weight did you give to the income-producing possibilities of the entire list in making your recommendation as to change?

"A. Well, we try to reduce the impact of any reduction in income to as little force as possible; but, of course, if you switch from any common stock nowadays into a fixed income investment, you are going to show a drop in your income. This drop in income here was relatively minor; I think it amounted to about $50 a year, which is a very small sacrifice to pay, in our estimation, versus what a general lowering of the stock market would have on a fund such as this."

From the notes of testimony, it appears to be undisputed that the annual income of the trust would be reduced by $63.29 if the changes in investments proposed by the corporate trustee are to be made.

The position of the individual cotrustee is largely as set forth in her letter of May 5, 1952, addressed to the corporate cotrustee. This position asserts that a sale of any of the common stocks in the trust would be an erroneous judgment and not an exercise of due care and prudence by the trustees; would not be for the best interests of the estate or of the minor beneficiary and would be contrary to the intent of testator as expressed in his will.

In this dispute between cotrustees the jurisdiction of the court is invoked by the corporate cotrustee under the provisions of section 949(b) of the Fiduciaries Act of April 18, 1949, P. L. 512, which provides as follows:

"When a dispute shall arise among trustees as to the exercise or non-exercise of any of their powers and there shall be no agreement of a majority of them, unless otherwise provided by the trust instrument, the court, upon petition filed by any of the trustees or by any party in interest, aided if necessary by the report of a master, in its discretion, may direct the exercise or non-exercise of the power as the court shall deem for the best interest of the trust."

The court has no doubt that the shares of common stocks which the corporate trustee desires to sell are generally regarded as sound investments in that class of securities. But the fact remains that shares of common stocks are not authorized investments for trust funds in Pennsylvania except as limited by section 9 of the Fiduciaries Investment Act of 1949, as amended. Under section 14 of the Fiduciaries Investment Act of 1949 common stocks may only be retained by trustees in the exercise of due care and prudence. When

the securities which the corporate trustee wishes sold have been liquidated, over one half of the estate will still remain invested in common stocks. The proposed change from nonlegal to authorized investments is in the interest of safety and conservation. The annual income of the estate will be reduced by approximately $65. The minor beneficiary of the trust is about 19 years of age. The income of the trust is applied toward the payment of the expense of his college education. The principal of the trust is required by the will to be delivered to him when he attains his majority. The annual loss of income involved in the proposed reinvestment is a sacrifice but a small one if its effect is to insure that a substantial part of the trust estate will be paid and delivered without diminution in value to the beneficiary when he attains 21 years of age.

Adequate reasons appear in the testimony to support the allegation that due care and prudence require that part of the common stock holdings of the trust be sold and the proceeds reinvested in authorized investments. There is nothing in the decisional or statute law of the Commonwealth nor in the will of decedent which prohibits the proposed sale and reinvestment.

The petition of the corporate cotrustee is thus addressed to the discretion of the court which is asked to determine whether the proposed sale and reinvestment of proceeds represents an exercise of due care and prudence in the circumstances here present.

In determining the controversy in the case at bar the court will follow the policy of the law which prohibits the investment of trust funds in common stocks except as to one third of the market value of the estate. (See section 9 of the Fiducaries Investment Act of 1949, as amended by the Act of August 24, 1951, P. L. 1410.) The court will adhere to its traditional policy of protecting the estate of a minor child whether it be

in the hands of a trustee or a guardian. The exceptions filed to the decree of the hearing judge entered February 20, 1953, will be dismissed and the decree will be affirmed.