## Scott Trust (No. 2)

666

[redacted]

*M. Paul Smith, Cuthbert H. Latta, Maurice Heckscher* and *Joseph W. Marshall, Jr.,* for accountant.

*Samuel L. Sagendorph* and *George V. Strong,* for objector.

*Thomas E. Waters,* guardian and trustee ad litem.

TAXIS, P. J., July 8, 1960:—In these trust estates, objections have been filed to the accounts of the Girard Trust Corn Exchange Bank, trustee, seeking generally to surcharge the trustee for losses allegedly incurred because of the sale in 1942 of certain shares of the Aluminum Company of America and Aluminium, Limited, its Canadian counterpart. As part of their case, the objectors first offered the expert opinion testimony of Dr. Nathaniel Jackendoff, but such testimony was disallowed by this court in an earlier opinion (9 Fiduc. Rep. 369), relying mainly on Lentz Estate, 364 Pa. 304.

Following this ruling, and preparatory to a final argument and decision on the merits of the objections, objectors have attempted to introduce as matter of which the court should take judicial notice, certain

publications and literature allegedly setting forth facts which should have been considered by the trustee, and have, in addition, offered to make a part of the record by deposition certain specific facts relating to so-called excess profits tax credits, certificates of necessity, and accelerated depletion, depreciation and/or amortization allowances pertinent to the financial position of the two corporations at the time of the sale of these securities.

The first matter to be considered is one involving the objectors' request that the court take judicial notice of six publications of the United States Government Printing Office, which are:

1. Material Survey. Aluminum. (Prepared by the United States Department of Commerce.)

2. Historical Statistics of the United States. (Issued by the Bureau of the Census.)

3. Mineral Year Book. (Prepared by the Department of the Interior.)

4. Production Indices. (Contained in Federal Reserve Bulletins.)

5. Survey of Current Business. (Prepared by the Department of Commerce.)

6. National Income 1954. (Prepared by the Department of Commerce.)

Preliminarily, it is contended that all of these would be admissible into evidence under section 8 of the Act of May 24, 1951, P. L. 393, 28 PS §128, and must, therefore, be judicially noticed. This act reads as follows:

"The official records and other documents, being enactments, or regulations, or decisions, or rulings, or proceedings, or reports, or other official acts of Congress, or any Federal executive department or subdivision therein, or of any Federal court, or commission, or board, or agency, or public institution, may be evidenced by the Federal Register, or by a

printed book, or pamphlet, or periodical, purporting to be published by the Government Printing Office by authority."

This court is of the opinion that this statute neither requires nor authorizes the admission of the material offered. Case authority apparently is nonexistent, but it seems evident from a careful reading of this act that it relates solely to *records* of actions, or regulations, or rulings or other official administrative or executive acts of Federal departments and agencies and has no bearing on the admissibility of statistical or other types of information published in the course of governmental service to the general public. Therefore, if these publications are to be judicially noticed, such will have to be done for the same reasons and by the application of the same law as that governing the second group of statistical information which it is contended should but need not necessarily be judicially noticed.

This group is composed of the following:

1. Moody's Industrial Manuals.

2. Poor's Industrial Manuals (for 1941 and years prior thereto.)

3. Standard's Statistics Industrial Manuals (for 1941 and years prior thereto.)

4. Standard and Poor's Industrial Manuals (for 1941 and years subsequent thereto.)

5. Moody's Investment Manuals.

6. Standard and Poor's "Outlook for the Security Markets," dated September 29, 1941.

7. Metal Statistics (published by the American Metal Markets.)

8. Standard and Poor's Industry Surveys, Metals, Non-Ferrous, dated January 16, 1942.

9. Graph prepared by the Francis I. DuPont Company (showing price movement of aluminum stocks in comparison with industrial shares generally for the years 1934 through 1954.)

10. Fortune Magazine (for the year 1941.)

11. Barron's National Business and Financial Weekly (dated February 10, 1941 and October 13, 1941.)

12. Institutional Holdings of Securities on December 31, 1939. (Prepared by Poor, 1940.)

13. Commercial and Financial Chronicle, Volumes 152 and 155.

Some time has been spent by the court in examining some of these publications to the extent they have been available in public libraries. Some have not been located and in others the relevancy of any of the material cited is open to substantial question; but the court assumes that to the extent any publication must be used by it for final disposition counsel for the objectors will make it available and will, at the same time, cite the specific portion which they deem germane to the problem at hand.

Lentz Estate, supra, is adequate authority for this court to notice judicially all of the offered publications. In his adjudication in that estate, the late Judge Holland, in explaining his repeated refusal to admit similar publications into evidence, held that he was required to take judicial notice of all such statistics and facts, and that counsel had a right to argue from them without adding to an already voluminous record. Here, counsel for the accountant initially agreed only that the court could take judicial notice of statistical information, but could not notice opinions or conclusions contained in the same sources. Thus, a sharper issue has been drawn in this case than in Lentz Estate, based chiefly on counsel's quite understandable desire to know exactly of what the record will consist, before going to argument on the merits. After a conference with the court on December 2, 1959, counsel for the accountant withdrew all opposition to the court taking judicial notice of the publications and information in question.

Therefore, the court now states that all of the material set forth above will be available for judicial notice in deciding this matter on its merits. In addition, leave is specifically granted the accountant to submit or refer to other similar information which it believes should likewise be noticed by the court.

The next matter to be considered raises a somewhat more difficult issue. The accountant strenuously objects to the admission into evidence of certain facts relating to the financial structure of the two aluminum companies in question. This evidence may be briefly described as follows:

1. The dollar amount of Certificates of Necessity issued to the Aluminum Company of America up to and including March, 1942;

2. The company's excess profits tax credit for the years 1940 and 1941; and

3. The amounts of depletion, depreciation and/or amortization charged against income by the company in 1940 and 1941.

By way of explanation, it should be noted that the so-called certificates of necessity were certificates issued by governmental authorities permitting rapid amortization out of profits before income taxes of "emergency facilities," which in turn were defined as facilities necessary to the national defense program. The excess profits tax credit was a similar arrangement to encourage capital investment for the sake of the defense program whereby a certain portion of the dollar value of capital additions was credited against the excess profits tax imposed by the Second Revenue Act of 1940.

The objectors contend generally that the above information, together with that provided by the statistical matter earlier discussed, will show unmistakably that the industrial fortunes of the Aluminum Company of America and of Aluminium, Limited, were so

sharply and clearly on the rise by early 1942 that it was supine negligence on the part of the trustee to dispose of the shares of the companies.

The accountant on the other hand opposes the admission of this evidence on the ground that it was not available to it at the time the sales of the stocks were made. No objection is made to relevance as such, but it is contended that the trustee could not in the exercise of ordinary prudence have known the precise facts offered. Except in one or two relatively unimportant areas, it is conceded that the facts as such were in existence; but it is stated that the issuance of certificates of necessity was given no publicity, that the excess profits tax credit was determined by the income tax returns of the company which were not public, and that only total amounts of depletion, depreciation and/or amortization could be determined from the annual report of the company.

It is the opinion of this court that this evidence is admissible. The immediate answer to accountant's argument relating to nonpublication is that only the availability or nonavailability of facts governs; it is not the form in which such facts are available, but only whether or not they could have been discovered if proper effort were made. There is some implication in the record that there might have been more than ordinary difficulty in obtaining information concerning this stock from the Aluminum Company of America, but in the absence of a showing that the various items of information in question were sought for and specifically refused, mere difficulty of ascertainment cannot prevent their admission into evidence. In addition, the trustee was legal title holder to and administrator of a substantial block of stock, and as such was entitled to information concerning the records of all branches of the company's operations. At this time, it is not for the court to say what inquiries should have been made,

or how diligently they should have been pursued; but the court does hold that this evidence, relating to the financial condition of the corporation, is admissible. It does not become irrelevant or prejudicial in a surcharge matter simply because it may have been difficult for the trustee to obtain. Accordingly, the objectors' offer of proof is approved, and counsel for the objectors is hereby instructed to take depositions incorporating the facts contained in said offer, or alternatively, to arrange with counsel for the trustee to stipulate said facts.