**Coxe Trust**

*John O. Platt, Jr.*, and *Duane, Morris & Heckscher*, for accountant.

*Ralph W. Kent*, guardian and trustee ad litem.

MACELREE, P. J., November 14, 1960.—Charles E. Coxe died January 11, 1927, leaving a will dated August 1, 1925. Said will was duly probated before the Register of Wills of Chester County, and letters testamentary granted to Louisa White Coxe, Eckley B. Coxe, 3rd, and Jane Gordon Coxe, now Jane Gordon Fletcher.

Item II of the will of Charles E. Coxe devised and bequeathed his residuary estate to his wife, Louisa White Coxe, as trustee for herself during her lifetime. Following her death, the Girard Trust Company, now Girard Trust Corn Exchange Bank, was designated as succeeding trustee and directed to pay the net income to testator's children, Eckley B. Coxe, 3rd, and Jane Gordon Coxe, now Jane Gordon Fletcher, for their lives. Each child was given a general testamentary power of appointment over one half of the corpus. In default of the exercise of this power, his share was to be distributed under the intestate laws of Pennsylvania.

Inasmuch as the apportionment calculations between principal and income are not the subject of dispute, the only question arising in that connection is

whether or not any useful purpose can be served by an award of any part of the apportionable items to the estate of Louisa White Coxe, deceased.

The calculations of Girard Trust Corn Exchange Bank show that cash of $23,235.24, together with certain shares of stock therein listed, are allocable to income under the Pennsylvania intact value rules of apportionment.

The aforesaid calculations further show that of the cash involved the sum of $8,047.83 can be allocated to the estate of Louisa White Coxe, the original income beneficiary, and that the balance of the cash and all of the stocks are allocable in equal shares to Jane Gordon Fletcher and Eckley B. Coxe, 3rd, the present income beneficiaries.

Louisa White Coxe died January 7, 1946, a resident of Chester County, where her will was probated in the office of the register of wills and letters testamentary were issued January 12, 1946.

By the terms of her will, Louisa White Coxe devised and bequeathed her entire estate in equal shares to her two children, Eckley B. Coxe, 3rd, and Jane Gordon Fletcher, the present income beneficiaries, and appointed them as her executors.

A similar situation is fully discussed in Bamberger Estate, 20 D. & C. 2d 394.

This court believes that the opinion of Judge Lefever in the above-entitled matter properly applies the legal principles involved to the effect that apportionment among successive life tenants of items apportionable to income under the Pennsylvania rule of apportionment lies within the broad discretion of the orphans' court, but generally such apportionment will not be made among the estate of the successive life tenants except in the most unusual and compelling circumstances, and the burden is upon the estate of the deceased life tenant to show that in any particular

case such circumstances exist and that the estate is entitled to such apportionment. No such claim is here present.

As stated by Judge Lefever, and this court adopts the logic of his opinion, apportionable income arising from application of the Pennsylvania rule of apportionment need not be apportioned to successive life tenants, but will be awarded to the life tenants living on the date of the apportionment-requiring event, where testator left his residuary estate in trust to pay the income to successive life tenants, namely, his wife and his children, and their estates have been closed and where allocation of apportionable items to their estates would involve the opening thereof, thereby creating difficult problems and additional burdens upon the trustee in working out, not only intricate apportionment calculations, but in determining income, estate and inheritance taxes.

This court is of opinion that no useful purpose would be served by awarding any part of the apportionable items to the estate of Louisa White Coxe.

Accordingly, this court will award the apportionable items to the present life tenants, to wit: Eckley B. Coxe, 3rd, and Jane Gordon Fletcher in equal shares.

The surcharge questions are stated by the guardian and trustee ad litem, as follows:

(a) Is the successor trustee subject to surcharge for losses incurred by reason of its retention of, and dealings with, nonlegal investments during its administration of the trust?

(b) Is the successor trustee subject to surcharge for losses incurred by reason of its failure to surcharge the original trustee by reason of her retention and dealings with nonlegal investments during her administration of the trust?

Counsel for the accountant, in an exhaustive brief,

suggest that the requested surcharge raises two legal questions.

1. "The first concerns the effect of the general testamentary powers of appointment given Eckley B. Coxe, 3rd, and Jane Gordon Fletcher."

They contend that these persons approved the policy of nonlegal investments followed by their mother and if, by virute of their powers, their approval was binding on all potential remaindermen, then no surcharge can be imposed for losses on such investments prior to 1943.

2. "The second question concerns the computation of a surcharge which is to be imposed for failure to collect a claim belonging to the trust estate."

They contend that even if the approval of Eckley B. Coxe, 3rd, and Jane Gordon Fletcher could not affect the remainder interest, a surcharge for Mrs. Coxe's losses must still be limited by the total sum which the present trustee could, in fact, have recovered from her estate.

This court is of opinion that an orderly approach to the matter of surcharges requires the court to answer two questions.

First: What, if any, liability was incurred by Louisa White Coxe during the period of her administration of the trust from its creation in 1927 until relinquishment on December 14, 1942, by Eckley B. Coxe, 3rd, and Jane Gordon Fletcher of their power of appointment for which the succeeding trustee should have sought a surcharge against the estate of Louisa White Coxe?

Second: What, if any, liability was incurred and by whom during the period from December 14, 1942, to the present time?

The questions will be taken up in the order in which they have been stated.

First. The losses realized by Louisa White Coxe on

her sales of nonlegal securities from 1927 through December 14, 1942, amounted to the sum of $130,-625.12.

The guardian and trustee ad litem suggests, inter alia, that the accountant be surcharged with this amount by reason of its failure to seek a surcharge against the estate of Louisa White Coxe.

Both Eckley B. Coxe, 3rd, and Jane Gordon Fletcher, life tenants with power of appointment, were aware of their mother's investment policy and both approved thereof unequivocally.

This court believes it to be the law in Pennsylvania that the remaindermen of a trust may not object to nonlegal investments approved by one exercising a general testamentary power of appointment over the corpus: Curran's Estate, 312 Pa. 416; Perkins' Trust Estate, 314 Pa. 49; Wilbur's Estate, 334 Pa. 45.

The logic underlying the decisions in the aforegoing cases is well summarized in Perkins' Trust Estate, 314 Pa. 49, 51, where the court states, " ' . . . a life tenant with a general power of appointment has an estate tantamount to a fee,' . . . 'if, in the circumstances, with full knowledge of the facts and of [his] rights, the life tenant was content, [his] appointees will not be heard to complain' . . . 'it is "unfair and unjust to permit a person to induce the making of investments . . . or persons claiming through or under him, to repudiate such investments and to benefit thereby." ' "

The Restatement of Trusts, 2d Ed., §216(h), states the following rule for all cases where a beneficiary having general power of appointment consents to breach of the trust:

"Where a beneficiary has a general power of appointment, even though it is a power to appoint by will alone, his consent to a breach of trust precludes the persons to whom he makes an appointment from

holding the trustee liable for the breach of trust. So also, even if the beneficiary who has a general power of appointment fails to exercise the power, the persons taking in default of appointment are precluded by his consent from holding the trustee liable."

Despite the legal principles stated in the three cases noted above, all of which preceded Reyburn's Estate, 43 D. & C. 85, the late Judge Van Dusen, whose opinions are entitled to the greatest respect, distinguished those cases from Reyburn's Estate, wherein the appointor was living and it is not known whether those who will be ultimately entitled to principal will claim under him or will claim in default of appointment, and held that the rule announced in Curran's Estate, Perkins' Trust Estate and Wilbur's Estate, does not go so far as to give the appointor, who in Reyburn's Estate was a cotrustee, the power to disregard the terms of the trust to the prejudice of those who will not claim under him, but will claim directly from the original testator.

Later, however, our Supreme Court, in Mallon's Estate, 345 Pa. 115, held: "The principle that a trustee must administer the trust solely in the interest of the beneficiaries and must not deal with trust property for the benefit of himself was held not to be applicable, under the peculiar circumstances in this case, where it appeared that the trustee had the right to vest himself with an absolute estate in the trust property."

In the opinion of this court the situation in the subject estate differs somewhat from any of the four cases above noted in that the parties now entitled to the remainder interest and represented by the guardian and trustee ad litem have, in point of fact, become remaindermen, not in default of appointment, but by reason of the positive action of living life tenants with power of appointment who by deeds dated De-

cember 14, 1942, relinquished absolutely the general testamentary powers of appointment given them under the will of Charles E. Coxe, deceased.

Having thus become entitled to the remainder interest, not by default but by such positive action of the donees of the power, this court is of opinion that the principle stated in Perkins's Trust Estate is applicable and that it would be inequitable and unjust to permit such persons benefitting through such voluntary relinquishment to repudiate such investments made prior to the voluntary relinquishment and to benefit thereby.

Accordingly, this court holds that the accountant, as succeeding trustee, should not be surcharged for its failure to seek a surcharge against the estate of Louisa White Coxe in the sum of $130,625.12, or any part thereof.

Second: Various losses were realized by Louisa White Coxe and Girard Trust Corn Exchange Bank as trustees, by reason of their respective sales of nonlegal securities subsequent to December 15, 1942, as reflected in supplemental statement of facts.

Prior to the relinquishment of their powers of appointment, Eckley B. Coxe, 3rd, and Jane Gordon Fletcher had what was tantamount to an absolute estate.

By their deeds of December 14, 1942, they voluntarily elected to relinquish their powers of appointment and, thereafter, in the opinion of this court, no longer possessed the right to condone losses sustained on the sale of nonlegal investments.

Once the effective consent to nonlegal investments was terminated it became the duty of the then trustee to dispose of such investments within a reasonable time thereafter.

Such a duty, in the opinion of this court, was thus imposed upon both Louisa White Coxe and, in turn,

upon Girard Trust Corn Exchange Bank, successor trustee, when it received nonlegal securities that Mrs. Coxe had failed to dispose of.

It is further the opinion of this court that each of the trustees is liable for the losses resulting from their failure to dispose of the nonlegal securities after the consent to invest in them was terminated: Scott on Trusts, 2d ed., sec. 216, page 1589, Restatement of Trusts, 2d §216, comment (d).

It is contended by counsel for the accountant that nevertheless such a trustee is not required to sell nonlegal investments immediately "under the whip of the law", (Seaman's Estate, 333 Pa. 358, 363) and that its duty is only to dispose of them within a reasonable time.

Subsequent decisions have reiterated that "a reasonable time" depends on the particular facts of each case: Lewis' Estate, 344 Pa. 586, 590.

None has imposed a surcharge for failure to dispose of nonlegal investments in less than one year. In the absence then of any evidence of unusual conditions requiring either rapid or delayed sale, and no such evidence has been offered, the time after which a surcharge should be imposed would seem to be one year.

Such a conclusion is in accord with the rule of law stated in the Restatement of Trusts, 2d, §230, comment (b) regarding the disposition of nonlegal investments received from the testator or settlor.

"When there is a duty to convert trust property, the conversion must be made within a reasonable time after the creation of the trust. Ordinarily any time within a year is reasonable, . . ."

It is contended on behalf of the accountant that neither trustee is liable for surcharge for that portion of the eventual loss of nonlegal securities made prior to December 14, 1942, when it had already occurred by that date or within a reasonable time thereafter,

and that the surchargeable loss on such investments should be limited to the difference between the total loss as fixed by their ultimate sale and any loss incurred as of the date they should have been sold.

Thus, it is contended in the present case that losses on investments made prior to December 14, 1942, and sold thereafter should be computed on the basis of market value as of one year from that date and not on their carrying value whenever the 1943 value differs from their carrying value; and in those cases where the December 1943 value was less than the price finally realized for a security, the loss on the carrying value should be eliminated entirely because the trust suffered no harm by the improper retention; and further, where the trust would have realized a profit by a sale of December 1943, this figure rather than the carrying value should be used to compute the loss.

This court believes such a basis of calculation to be in accordance with the law in Pennsylvania and with the equitable principles involved in such matters in orphans' court.

So computed, the losses suffered fall into two categories:

(a) Losses on nonlegal securities held by Louisa White Coxe prior to December 15, 1942, which were incurred by the retention of these securities after December 15, 1943, amounting to $6,503.80.

(b) Losses on nonlegal investments purchased by Louisa White Coxe subsequent to December 15, 1942, amounting to $11,324.95.

This court is of opinion that such total liability of $17,828.75 was incurred by Louisa White Coxe during the period of her administration of the trust for which the present accountant could, and should, have sought a surcharge against the estate of Louisa White Coxe, deceased, and the Girard Trust Corn Exchange

Bank will be surcharged with such sum of $17,828.75.

Girard Trust Corn Exchange Bank admits losses on nonlegal investments realized by it during its administration of the trust in the sum of $6,303.98.

It offers in explanation thereof that it agreed to continue the investment policies of Mrs. Coxe and to refrain from asking that her estate be surcharged for her losses on nonlegal investments at the request of the life tenants and all of the then adult grandchildren of the testator, all of whom it is averred agreed by an instrument dated May 16, 1947, to indemnify Girard Trust Corn Exchange Bank for any surcharge imposed as a result of its action.

Such a statement serves to explain, but neither excuses nor justifies, such actions to the prejudice of those parties in interest for whom a guardian and trustee ad litem was duly appointed in the subject estate and who, in the opinion of this court, acted properly in their behalf.

Accordingly, the Girard Trust Corn Exchange Bank will be surcharged with the further sum of $6,303.98.

Compensation to Ralph W. Kent, Esq., for his professional services as guardian ad litem and trustee ad litem, is herewith determined and allowed in the amount of $750.

Such compensation would ordinarily be directed to be charged against principal.

This court is of opinion and so decrees that inasmuch as the surcharges as made are required to be imposed despite approval by and requests of the present life tenants, that such compensation should not further deplete the corpus of the trust to the prejudice of the remaindermen to protect whose interests a guardian and trustee ad litem was appointed and for whose benefit the surcharges have been imposed, that said amount be paid from income.