# O'Neill *v.* O'Neill, Appellant.

*Trusts and trustees—Resulting trust—Parent and child—Real estate—Evidence.*

1. Where a son bargains for the purchase of real estate and his father in concluding the transaction takes title in his own name without the son's knowledge, a resulting trust will be established in favor of the son by evidence to the effect, that the latter lived with his parents for many years, during which he paid over to them considerable sums of money; that he went into possession of the real estate immediately after the purchase, made repairs and improvements and continued in undisturbed occupancy of the premises, without payment of rent, or other acknowledgment of any ownership in the father, for a period of more than three years; that the father had declared that the property was paid for with the son's money; and that it was assessed with the knowledge of the father in the son's name, and taxes were paid by him.

2. Whenever a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the cestui que trust.

3. The presumption of a resulting trust in land in favor of a son as against a father, arising from the use of the son's money in making the purchase, arises to the same extent as where the purchase is made in the name of a stranger.

Argued Feb. 8, 1910. Appeal, No. 377, Jan. T., 1909, by defendants, from decree of C. P. Bucks Co., April T., 1907, No. 2, in equity, on bill in equity in case of John J. O'Neill v. Morris O'Neill and Elizabeth O'Neill, his wife, Elizabeth O'Neill, Administratrix of Morris O'Neill, deceased, and Elizabeth O'Neill. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity to declare a resulting trust in real estate.

STOUT, P. J., found the material facts to be as follows:

The plaintiff in this bill is the son, and the defendants are respectively the father and mother of the plaintiff.

After he became of age, the plaintiff continued to live with his parents. While working in the neighborhood of his home he boarded at home. At other times, he boarded in the neigh-

borhood of his work, paid his board out of his earnings, and visited his home at intervals. He continued to live with his parents after his marriage until he moved with his wife into the Reading avenue property, the property described in the bill, about April 1, 1903.

Morris O'Neill and Elizabeth O'Neill, the defendants, are advanced in age. They occupy a small house and lot on the canal bank in Yardley borough, about two squares from the Reading avenue property, described in the bill. Morris O'Neill was employed by the canal company as lock tender for which he was paid wages per month throughout the year. He was also running canal stables on the canal property, the proceeds of which he received. What his income per year from both sources was does not appear. Neither does it appear that Morris O'Neill had more than very moderate means. Elizabeth O'Neill is an aged woman, apparently without education, and barely able to write her name. Whether she was capable of keeping an account does not appear.

The plaintiff gave no money directly to his father, Morris O'Neill. If any money of the plaintiff came into the hands of Morris O'Neill he received it through his wife, Elizabeth O'Neill.

It does not clearly appear that there was a contract for board. The plaintiff claims that he paid $5.00 a week, and that his mother was to deduct that sum per week out of the money he gave her; on the other hand, she claims that John was not charged board while at home, but that he brought home $5.00 every two weeks when he was working away from home; that she could not run the house without him giving her something; that about one-third of the time he failed to pay her this sum.

The plaintiff paid over to his mother out of his earnings from time to time various sums of money over and above her board, to keep for him. These sums aggregated to a considerable amount. This is found, not only from the testimony of the plaintiff, but from the declarations of Elizabeth O'Neill to other persons. How much he so paid over to her it is impossible to determine correctly, and not even approximately except by the plaintiff's own uncorroborated testimony. He

kept no account of the moneys paid over by him to her. His own testimony is unsatisfactory in that it was at best an approximation only from a recollection of the various jobs he worked on for a period of nine years, without precise or clear recollection of the number of weeks he worked on each job, or the particular days or weeks he may not have worked, and deducting from his weekly wages a customary sum of $2.00 which he alleges he allowed himself to meet his incidental expenses and clothing. Plaintiff also at various times received from his mother various small sums of money of which he kept no account. The defendant, Elizabeth O'Neill, kept no account of moneys received by her from him, or of moneys paid out to him or on his account.

The negotiations for the purchase of the Reading avenue property were conducted by John J. O'Neill until the offer was received from Bucks County Trust Company, through Mr. White, to sell the property for $1,250. Thereupon, John J. O'Neill and Morris O'Neill came together to the agent, Mr. White, and stated that they would take the property at the price named. No written contract was made. Shortly afterwards, Morris O'Neill called upon Mr. White alone to see if the property was all right. At that time Mr. White said to him: "It is very nice for you to buy this property for John," to which he replied, "Yes, I am buying it with his own money, and I hope he will be suited." Later, Mr. White met Morris O'Neill on the street and asked him in whose name he wanted the property put; after hesitating a little, answered, "Well, maybe you had better put it in my name." Again, on the day settlement was made, when Morris O'Neill handed Mr. White a certified check for the purchase money, he said to Mr. White, "Well, this is John's money, and he is the one that is to be suited." Mr. White then took the check to the Bucks County Trust Company. The deed had been executed to Morris O'Neill in pursuance of instructions given by Mr. White, and bears date March 5, 1903. Mr. White took the deed and placed it in the recorder's office for record, March 7, 1903, without first taking it to Morris O'Neill or his son. Morris O'Neill took out insurance upon the property and paid for the recording.

Upon one of the visits to Mr. White's house, Mrs. White heard Morris O'Neill say to Mr. White: "It is his own (John's) money, he has been a good boy, he has saved his money, and it is his own money that pays for it."

The plaintiff, John J. O'Neill, went into possession of the property about April 1, 1903. He at once commenced to improve the property. It does not appear that Morris O'Neill had actual knowledge of the inside repairs. He had, however, every opportunity to know all about the outside improvements as he lived only two squares away. These repairs and improvements covered a period of about two years and a half. The property was assessed in the name of John J. O'Neill who paid all the taxes and water rents until this bill was filed. After the bill was filed Morris O'Neill paid the county tax, without the knowledge of his son.

The plaintiff, John J. O'Neill, requested his father to make settlement for the property. He was not present when settlement was made. He had no knowledge that the deed was made in the name of his father. He first discovered this fact when he took the deed out of the recorder office, July 29, 1903.

The court entered a decree declaring a trust in favor of plaintiff.

*Error assigned* was the decree of the court.

*William C. Ryan,* for appellants.—Such declarations as the learned court has accepted in the case at bar are insufficient to raise a resulting trust: Hugus v. Walker, 12 Pa. 173; Robertson v. Robertson, 9 Watts, 32; Ackerman v. Fisher, 57 Pa. 457; Poorman v. Kilgore, 26 Pa. 365; Fidelity Ins. Trust & Safe Dep. Co. v. Moore, 194 Pa. 617.

*Thomas Ross,* of *Yerkes, Ross & Ross,* for appellee.

OPINION BY MR. JUSTICE POTTER, February 28, 1910:

The only question raised by this appeal is whether the evidence was sufficient to justify the conclusion of the court below that there was a resulting trust in favor of the plaintiff as

to the real estate in question. The court found as a fact that the purchase money belonged to the plaintiff. The legal title was placed in the father, one of the defendants, but the son, who is the plaintiff, bargained for the purchase of the property, and, without the knowledge or consent of the son, the deed was made out in the name of the father. There was evidence to show that the son, who lived with his parents for years after his maturity, from time to time turned over considerable sums of money to them. That upon at least two occasions the father, Morris O'Neill, declared that the property in question was paid for with the son's money. The case of the plaintiff was further strengthened by the fact, as shown by the evidence, that he went into possession of the property at once, and made repairs and improvements, and continued in undisturbed occupancy of the premises, without payment of rent, or other acknowledgment of any ownership in the father, for a period of more than three years. It was also shown that the property was, with the knowledge and consent of Morris O'Neill, assessed in the name of the son, and taxes were paid by him. The testimony of the plaintiff showed in detail the money earned by him during the period under consideration, and the amounts turned over to his parents for safe-keeping, and the assurances given him that his father would act as banker, and that his money would be all right, and would be on hand when needed. Our examination of the testimony has satisfied us that the trial judge was fully justified in finding that the real estate was purchased with the money of the son. If so, a resulting trust would arise in favor of the son. It was his money and not that of the father which formed the consideration for the purchase, and which was converted into the real estate. When this fact was established by satisfactory evidence, the plaintiff was entitled to a decree in his favor. "Whenever a trust-fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form, liable to the rights of the cestui que trust:" Thompson's App., 22 Pa. 16. The evidence shows no agreement by the son that the purchase should be made in the name of the father. The deed was made to him without

the knowledge of the son.  The relationship of the parties makes no difference.  The presumption of a resulting trust in favor of the son, arising from the use of his money in making the purchase, arises to the same extent as where the purchase is made in the name of a stranger.

We see no merit in any of the assignments of error.  They are dismissed, and the decree of the court below is affirmed.