Saeger Estates.

Argued October 4, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Herbert J. Hartzog,* with him *Arthur M. Comley,* for appellants.

*Harold Butz,* of *Butz, Steckel & Rupp,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, October 28, 1940:

These appeals are from decrees of the court below refusing to compel the substitution of cash for certain mortgage investments made by appellee, Lehigh Valley Trust Company, as sole trustee of two testamentary trusts, one of which was created by the will of Alfred G. Saeger, who died May 23, 1913, and the other of which was created by the will of Florence T. Saeger, who died October 18, 1923. The appeals were argued together, and, as the legal questions involved on the two appeals are substantially the same, they will be disposed of in this one opinion. Bertha E. Howell and Eloise Howell Sammis, life-tenant and remainderman in each of the trusts in question, are the appellants.

At the request of counsel for appellants, the trustee, on October 17, 1938, filed a first accounting in each of the trusts, showing a principal balance of $54,662.45 in the Alfred G. Saeger trust and, in the Florence T. Saeger trust, principal in the sum of $26,863.40. To these accounts appellants filed exceptions claiming, inter alia, that credit should be disallowed accountant in the Alfred G. Saeger trust for a $25,000.00 first mortgage, hereinafter called the "Hunsicker" mortgage, covering a large garage property located at 519-27 North Twelfth Street, Allentown, Pennsylvania, and in the

Florence T. Saeger trust for real estate acquired upon foreclosure, in 1935, of two first mortgages held as investments in this estate, hereinafter referred to as the "Gunn" and "Kistler" mortgages, covering a storeroom and apartment building located at 111 North Sixth Street, and a single dwelling-house located at 414-16 Leh Street, in Allentown, and in the amounts of $14,062.76 and $12,061.96, respectively. Appellants asked that accountant be compelled to take these investments out of the trusts and substitute cash therefor. Other exceptions filed by appellants were sustained by the court below, after audit, and surcharges, which the trustee has paid, totaling $1,930.47 in the Alfred G. Saeger trust and $1,034.98 in the Florence T. Saeger trust, were imposed. The exceptions relating to the investments above enumerated were, however, dismissed, as were also exceptions to the adjudications and decrees nisi, and the adjudications as made were confirmed absolutely. The questions, as limited by appellants statements of questions involved, relate solely to the refusal of the court below to compel the substitution of cash for the aforementioned Hunsicker, Gunn and Kistler mortgage investments, which investments, made between October 17, 1924, and March 26, 1929, appellants now contend were "improper investments per se" from their inception, and were improvidently and negligently managed.

The general standards governing trustees in the investment of trust funds have been stated many times by this Court. All that the law requires of a trustee "is common skill, common prudence and common caution, and he is not liable when he acts in good faith as others do with their own property. . . . A trustee will not be held personally liable for an honest exercise of a discretionary power, in the absence of supine negligence or wilful default . . . nor for the result of an intervening world calamity, beyond his power to foresee or prevent": *Detre's Estate*, 273 Pa. 341, 350. See also *Dempster's Estate*, 308 Pa. 153, 159; *Harton's Estate*, 331 Pa. 507, 524. "The propriety of an investment must be

judged as it appeared at the time it was made and not as viewed in the light of subsequent events": *Heyl's Estate,* 331 Pa. 202, 208. See also *Wood's Estate,* 272 Pa. 8, 12; *Detre's Estate,* supra, 349. "If a trust investment is properly questioned . . . the discretion exercised by [the trustee] will be scrutinized in the light of the will and of the Fiduciaries Act. The primary inquiry will be whether he has performed according to the recognized standard applied to the facts that existed at the time of the investment": *Carwithen's Estate,* 327 Pa. 490, 493. An examination of the mortgage investments in question in the light of these well established principles reveals no basis for a surcharge, as the court below held.

Appellants urge that these investments were improvident from their inception, because, as they contend, said investments were not properly diversified; it is contended that "even if mortgages were the only form of investment the bank would consider, they should have been split up in smaller amounts" and that this, per se, entitles appellants to have cash substituted therefor. Concededly the Fiduciaries Act of June 7, 1917, P. L. 447, as amended, imposes no such absolute duty upon trustees. At the time these investments were made it provided simply and without qualification, in section 41 (a) 1, that fiduciaries might invest in "bonds of one or more individuals secured by mortgage on real estate in this Commonwealth," and provided further, in section 41 (a) 3, that "In case the said moneys shall be invested as set forth . . . the said fiduciary shall be exempted from all liability for loss on the same, *in like manner as if such investments had been made in pursuance of directions in the will creating the trust."* Nor, does it appear that in any case thus far brought before this Court has a trustee been surcharged solely for the reason now urged. In the absence of controlling precedent and particularly in the absence of such requirement in the statutory law relating to the investment of trust funds, we conclude that, as was held by HOLLAND, P. J.,

in *Elkins' Estate,* 20 D. & C. 483,* relied upon by the court below, there is no authority in the law of this State for the doctrine, contended for by appellants, that trust investments, otherwise legal and entirely proper under all the recognized standards, are necessarily improvident per se for any claimed lack of proper diversification. Apt here, we think, is the following from *In re Adriance's Estate,* 260 N. Y. Supp. 173, 181, 145 Misc. 345: "It is entirely true that many financial authorities advocate wide diversity of investment. It is equally true that others as strenuously affirm the contrary, and agree with the familiar admonition of the late Andrew Carnegie: 'Put all your eggs in one basket and watch the basket.' This divergence of sentiment among the financial authorities would render a judicial decision in favor of either school of thought an ultra-hazardous undertaking."

In support of their claims appellants further urge that the decision in *Tracy v. Central Trust Company,* 327 Pa. 77, is applicable. That case involved merely the application, to a corporate trustee, of the long established rule that it is improper for a trustee to sell his individual property to himself as trustee; it was there decided that it is a breach of trust for such a trustee to sell to a trust estate, of which it is a trustee, mortgages originally taken and held by it, in its commercial department, for its own corporate purposes, a rule which, as the opinion points out, has been made part of the statutory law by the Act of May 15, 1933, P. L. 624, Article XI, Sec. 1111 (since amended by the Act of June 24, 1939, P. L. 731, Sec. 2). The rule in the Tracy case clearly has no application so far as the Hunsicker mortgage is concerned for the reason that this mortgage was transferred to the Alfred G. Saeger trust directly from another trust estate for which the accountant was trustee

---

* Affirmed on another ground, *Elkins's Estate,* 325 Pa. 373. See also *Ingram's Estate,* 30 D. & C. 400, 403; *Murgitroyde's Estate,* 32 D. & C. 155, 159. Compare *Naglee's Estate,* 6 Phila. 28, 29-30.

and for which it was originally acquired. As the trustee has no individual interest in the property in such a case, no question of self-dealing such as was involved in the Tracy case can arise, and where, as here, it appears that the transaction was fair to both trusts, no breach of fiduciary duty is involved: Restatement of Trusts, Sec. 170, Comment (q). Nor, is the Tracy decision controlling with respect to the Kistler and Gunn mortgages. The former was originally acquired on February 3, 1925, solely for the investment of trust funds and was held in the names of various trust estates of which the accountant was trustee, until September 27, 1928, when it was reacquired by the accountant and held by it until October 10, 1928, on which date it was assigned to the Florence T. Saeger trust; the latter mortgage, which was likewise acquired solely for the purpose of investment by trust estates, was dated February 15, 1929, and was assigned to the Florence T. Saeger trust on March 26, 1929. Since, as the court below found on unimpeached evidence, documentary and otherwise, these mortgages were acquired by the accountant *solely* for the purpose of investment of trust estates administered by it, were at all times earmarked and held in a special "Mortgage Account," and were assigned to the trust with reasonable promptness after acquisition or reacquisition, and since the mortgages were amply secured at the time of their transfer to the trust, it cannot be affirmed that there was such self-dealing as to make the transactions improper. Here the trustee is not, in substance, purchasing property for itself individually and later selling it to the trusts; it is merely advancing its own funds in order to facilitate the investment of the trust funds administered by it. See *Guthrie's Estate,* 320 Pa. 530; 2 Scott on Trusts, Sec. 179.4, page 949. In this connection it is worthy of note that while the Act of 1933, referred to in the Tracy case, condemns a transaction such as was there before the Court, it expressly condones what was done here. The Act provides: "A bank and trust company, shall not, directly

or indirectly, purchase with funds held by it as fiduciary, or exchange for any real or personal property held by it as fiduciary, any asset of its commercial department, *but this prohibition shall not apply* in the case of . . . *assets of its commercial department earmarked for future trust investment at the time of acquisition by the commercial department, and purchased or exchanged, within one year after acquisition, with funds or for property held by it as fiduciary.*"

Appellants' contention that the investments in question were not preceded by reasonably antecedent and independent, disinterested valuation and appraisement and that they are entitled to reject them for this reason is likewise without merit. Admittedly the properties covered by these mortgages were appraised, when the investments were originally made, at valuations exceeding by one-third or more the amounts of the respective mortgages. As the appraisals were fair and entirely free of fraud or collusion, as the court below found, appellants cannot justly complain that they were made by two undoubtedly well qualified directors of the accountant bank rather than by so-called disinterested third parties: *Harton's Estate*, 331 Pa. 507, 515; *Swindell's Estate*, 332 Pa. 161, 163. And, it does not appear that the security was in any instance inadequate when the mortgages were subsequently assigned to the Saeger trusts; on the contrary, it is established by uncontradicted testimony, given by real estate experts called by the accountant, that the margin of security in the case of each of the mortgages in question was then quite adequate. The fair value of the property covered by the $25,000 Hunsicker mortgage was thus fixed at $39,000 and $41,640 at the date of its assignment to the Alfred G. Saeger trust, to wit, November 16, 1927. The fair value of the property on which the $12,000 Kistler mortgage was given was similarly established to be $18,800 and $19,500, and the values placed upon the property securing the Gunn mortgage of $14,000 were $21,600 and $21,800. In addition to this testimony, the present own-

er of the property covered by the Hunsicker mortgage testified that, in December of 1926, he paid $40,000 for it and expended $4,000 to $5,000 in improvements, which testimony fully corroborates the testimony of accountant's real estate experts, at least so far as this property is concerned. Appellants had ample opportunity to introduce contradictory testimony as to the value of the properties in question but did not see fit to do so. It was not necessary to make these mortgages legal investments under the applicable provisions of the Fiduciaries Act then in force (Act of June 29, 1923, P. L. 955, Sec. 41(a) 1) to make any written certification of appraisement, nor were there any statutory requirements with respect to inspection of the property or the proportion which the amount of the mortgage should bear to its fair value. Having thus shown that the fair value of the properties afforded an ample margin of security at the time the mortgages thereon were taken into these trusts, as well as when the investments were accepted by it, the accountant bank has done all it was required to do. Cf. *Harton's Estate*, supra, 513.

The charges of mismanagement have not been seriously pressed and we do not discuss them. Suffice it to say that we agree with the court below that they have not been sustained. It is not without significance that appellants, both of whom are college graduates and women of social position, and who, as it appears, were at all times aware of the challenged investments and familiar with the properties by which they were secured, indicated no dissatisfaction whatever with the manner in which these investments were handled by accountant until their requests for the accountings filed on October 17, 1938.

After a most careful review of the records in these cases, we all agree that there is nothing therein which would warrant any surcharge in addition to those already imposed. Like the learned court below, we are convinced that this accountant "has exercised the best of good faith, common skill, common prudence, and

common caution, and that it is not responsible for any depreciation in value of the investments" now in question.

Decrees affirmed at appellants' cost.