Bolton, Appellant, *v.* Stillwagon.

620

Argued May 22, 1962. Before Bell, C. J., Mus-manno, Jones, Cohen, Eagen and O'Brien, JJ.

*H. Joseph Hepford,* with him *LeRoy S. Zimmerman,* for appellants.

*Richard W. Cleckner,* with him *Nissley, Cleckner & Fearen,* for appellees.

Opinion by Mr. Justice O'Brien, April 16, 1963:

The instant appeal is from the final decree of the court below in an action in equity commenced by the individual plaintiffs, lot holders in Shoop's Cemetery

Association, and the association itself as intervening plaintiff, against the individual defendants, trading as Landco, a partnership. The complaint in equity sought, inter alia: a declaration that the defendants held certain land as trustees for the cemetery association; an order directing defendants to reconvey the land to the cemetery association and an order directing the defendants to account for any profits realized from the resale of said property. The chancellor made findings of fact and conclusions of law and entered a decree nisi which, in effect, held that defendants stood in a fiduciary rather than a trustee capacity and ordered them to reconvey land to the cemetery association, but directed the cemetery association to reimburse defendants for expenses incurred in improvement of the property during the period of defendants' ownership, and directed that costs of the case be divided between the parties. Plaintiffs filed exceptions to the findings and conclusions of the chancellor and to the decree nisi, which exceptions were overruled and the decree nisi made final. The cemetery association appeals, seeking a reversal of that portion of the decree of the court below which orders reimbursement of the defendants and a division of the costs.

The controversy arises out of the operation of the perpetual care fund of the association and involves the alleged misuse of assets of the perpetual care fund by the individual defendants who were officers and directors of the cemetery association. The facts are well stated in the opinion of the court below as follows: "The Cemetery Association maintained a fund for the perpetual care and preservation of the grounds and the repair and renewal of buildings and property connected with the cemetery. From time to time money of this fund was invested in real estate mortgages. Two of the mortgages became delinquent and execution was issued against the real estate covered by the mortgages.

"The attorney for the Cemetery Association was the successful bidder at the sheriff sale.

"Before the sheriff's deeds were prepared, the attorney for the Cemetery Association suggested to the defendant, Stillwagon, that the Cemetery Association was not properly set up to manage real estate and invest additional money in real estate and that an attempt should be made to find a purchaser for the properties.

"Upon inquiry by Stillwagon, the attorney for the Cemetery Association advised him that the purchaser could be a member of the Board of Directors of the Cemetery Association if an honest, fair and full disclosure of the transaction were made to the Board of Directors and their approval obtained.

"Thereupon the defendants agreed to purchase the property and resolutions to that effect were prepared by the attorney for the Association and a special meeting of the Board of Directors was called, at which time the Board approved the sale. No notice of the sale was given to the lot holders of the Cemetery Association.

"The premises consisted of: (1) 23 lots each being 60 feet in width and extending in depths from 120 feet to 150 feet; (2) an unnumbered lot approximately 123 feet x 177 feet x 120 feet x 150 feet whereon was erected an apartment house and (3) another unnumbered lot approximately 309 feet x 175 feet x 333 feet x 137½ feet. Upon one of the lots there was an unfinished dwelling house. All the real estate was appraised by a witness for the plaintiffs to be of the value of $32,-800.

"At the direction of the attorney for the Cemetery Association the sheriff, by two deeds, conveyed the property to the defendants and their respective wives. The defendant grantees and their wives executed and delivered to the Cemetery Association a mortgage in the principal sum of $21,700. At the time of the trans-

fer of the property to the defendants, the investment of the Cemetery Association in the real estate amounted to $21,769.15. The difference was paid in cash by the defendants. Shortly thereafter the real estate was conveyed by the defendants to Landco, a partnership, consisting solely of the defendants.

"The defendants completed the unfinished dwelling house, and along with an adjoining lot were sold for $13,000.

"The Cemetery Association without receiving any consideration therefor released from the lien of the mortgage all of the real estate excluding the apartment house and the unnumbered lot.

"The defendants invested a considerable sum of money in the property in order to make it more saleable. The defendants did not attempt to conceal or misrepresent any phase of their conduct in the transaction."

The appellant disputes certain findings of fact of the chancellor, particularly those dealing with the approval by the board of directors of the cemetery association of the conveyance to appellees and the nonconcealment by the appellees of any phase of their conduct in the transaction. The scope of our review in this appeal has often been stated by this court, notably in *Commonwealth Trust Co. v. Szabo*, 391 Pa. 272, 276, 277, 138 A. 2d 85 (1957) : "In passing upon the questions raised on this appeal we must adhere to the well-established rule that a chancellor's findings of fact approved by a court en banc have all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal: [citing cases]. However, the chancellor's 'conclusions, whether of law or ultimate fact are no more than his reasoning from the underlying facts and are reviewable' . . . ." *Sechler v. Sechler*, 403 Pa. 1, 169 A. 2d 78 (1961) ; *Shydlinski v. Vogt*, 406 Pa. 534, 179 A. 2d 240 (1962).

A review of the record in the case at bar discloses adequate evidence sustaining the findings of fact of the chancellor and these findings, having been approved by the court en banc, will not be disturbed by us on this appeal. A review of his conclusions, however, leads us to a result different from that arrived at by the chancellor and the court en banc.

Appellant contends that appellees were liable as trustees of the perpetual care fund when they took title to the real estate and that it is entitled to a reconveyance of the real estate without reimbursing appellees for expenditures made by them upon the property. The court below rejected this contention and held that although appellant was entitled to a reconveyance, appellees were entitled to reimbursement.

The court below reached its conclusion by reasoning that the money invested in the first instance in the mortgages which were subsequently foreclosed was impressed by a trust under the provisions of the Act of May 5, 1933, P. L. 289, §315C, as amended, 15 P.S. §2851-315, which provides in part, "The directors of any such corporation [formed for the purpose of conducting or maintaining a cemetery] are hereby made trustees of any such funds so received or set aside [perpetual care funds], and neither such funds nor the income derived therefrom shall be used by such trustees for any purpose other than the purpose for which the same were set aside, donated, bequeathed or otherwise acquired . . .". Having impressed the funds, and presumably the mortgages, with a trust, the court below proceeds to terminate the trust when the mortgages were foreclosed and the property acquired by the association. This termination of trust is accomplished by reference to other sections of the Act of May 5, 1933, supra, specifically §§307 and 506 (15 P.S. §2851-307 and 15 P.S. §2851-506). Section 307 provides: "A nonprofit corporation may, at any tax or judicial sale of

any property upon which the corporation holds a mortgage or has a lien of any nature whatsoever, bid in such property if necessary for the protection of its interests. The corporation shall acquire a good and indefeasible title to any and all property so purchased, irrespective of any limitation as to the acquisition of property that may exist in its articles or in this act. All property so purchased may be held by the corporation until such time as it shall believe it advisable to dispose of the same, except that such property shall be sold within twenty years from the time it was purchased at the tax or judicial sale. It shall be lawful for the corporation to sell the property upon such terms and for such consideration as it deems desirable. The corporation may sell such property, and convey a marketable title thereto, without the authorization or confirmation of any court."

The court below held that since §307 does not impress real estate acquired at judicial sale with a trust, the appellees were acting as fiduciaries, in accordance with §506 of the Act, rather than as trustees.[1] The opinion below continues by indicating that the sale of the real estate to the appellees was improper because §308 of the Act (15 P.S. §2851-308) authorizes such sales only with the approval of a majority of the members of the corporation, a condition which clearly was not met here. For this reason, the court held, appellant is entitled to a reconveyance, but appellees, who were fiduciaries and had acted under a mistake of law after advice of counsel, were entitled to reimbursement for their expenditures in improving the property.

---

[1] Section 506 provides: "Officers and directors shall be deemed to stand in a fiduciary relation to the corporation, and shall discharge the duties of their respective positions in good faith and with that diligence, care and skill which ordinary prudent men would exercise under similar circumstances in their personal business affairs."

The entire rationale of the decision below is dependent on the holding that the real estate in question was not held by appellees as trustees for appellant. With this holding we do not agree. The assets of the perpetual care fund were held by the officers and directors as trustees for the association. Whether these assets were in the form of cash, mortgages, real estate or any other form, they were assets of the perpetual care fund and, as such, were impressed with a trust. "Where the relation of trustee and cestui que trust has once been established as to certain property in the hands of the trustee, no mere change of trust property from one form to another will destroy the relation". 39 P.L.E. Trusts, §387; *O'Neill v. O'Neill,* 227 Pa. 334, 76 A. 26 (1910); *McLaughlin v. Fulton,* 104 Pa. 161 (1883). It is, therefore, our conclusion that the real estate purchased at judicial sale was held by the officers and directors of the association as trustees, and their duties and liabilities must be measured as such. "The trustee is under a duty to the beneficiary to administer the trust *solely in the interest of the beneficiary*". Restatement (2d), Trusts, §170. (Emphasis supplied). In the case at bar, there is no questioning the fact that appellees bought the real estate for the purpose of securing personal profits. This action clearly constituted a breach of their duty as trustees of the perpetual care fund.

Comment b. to the above quoted section of the Restatement provides as follows: "b. *Sale of trust property to the trustee individually.* A trustee with power to sell trust property is under a duty not to sell to himself either by private sale or at auction, whether the property has a market price or not, and whether or not the trustee makes a profit thereby. It is immaterial that the trustee acts in good faith in purchasing trust property for himself, and that he pays a fair consideration.

"The trustee cannot properly purchase trust property for himself even though he does not make the sale. Thus, he cannot properly purchase trust property for himself on a foreclosure sale or tax sale or sale on execution of a judgment. To permit him to do so would create a situation where his personal interest would be in conflict with his duty as trustee. It is his duty as trustee to prevent the sale if possible or to see that the property is sold for as much as can be obtained. If he were permitted to bid in the property for himself at the sale, it would be for his personal advantage not to prevent the sale and to have as few bidders and as low bids as possible. The trustee who bids in the property for himself at such a sale is not permitted to keep the property, even though in the particular case he attempted to secure as many bidders and as high bids as he could and the amount which he bid was a fair consideration for the property.

"Where there are several trustees, one of them cannot properly purchase trust property for himself, although his co-trustees are not personally interested in the purchase and consent to the sale." It will be noted that the Restatement makes immaterial the fact that the trustee acts in good faith, or the fact that his cotrustees consent to the sale.

Here, the court below found that appellees acted in good faith. This finding is merely a conclusion of law and is, therefore, reviewable: *Sechler v. Sechler,* supra. The lower court based its conclusion that the defendants acted in good faith solely on the ground that they acted under the advice of counsel. What protection does a cestui que trust have when a finding that the trustee acted in good faith need only be based on advice of counsel? The advice of counsel was only one circumstance to be considered in determining the good faith of the defendants. A trustee is not liable for a mere error in judgment. *Wanamaker's Trust Estate,* 340 Pa.

419, 17 A. 2d 380 (1941). This is particularly so where the trustee acted in good faith: *Saeger Estates,* 340 Pa. 73, 16 A. 2d 19 (1940). However, advice of counsel is not a complete justification for a finding of good faith but is a factor to be considered in determining whether good faith exists: *Borden Trust,* 358 Pa. 138, 56 A. 2d 108 (1948).

The defendants were advised by counsel that the trust was not properly established to hold the property in question. But they were *not* advised that the twenty-two lots should be released from the lien of the mortgage. Prior to the sale in question, the trust held mortgages on properties valued at $32,500. The unpaid balance on these mortgages totalled $21,769.15. Subsequent to the purchase by defendants and the release of the twenty-two lots from the mortgage lien, the trust held a mortgage of $21,700 on real property valued at $12,000. Moreover, the defendants owed $1500 in interest arrearages on the mortgage, approximately one week prior to the present suit. The defendant, Stillwagon, made numerous unsecured personal loans from the trust. In fact, an unsecured automobile loan of $2500 made in 1957 by Stillwagon had only $100 in payments made thereon in a two year period. The defendant, Dehner, purchased the land without any examination of it. Both defendants testified they entered into the venture for personal profit. The beneficiaries were not informed of the transaction. When consideration is given to these surrounding circumstances, we think the finding that the defendants acted in good faith is clearly erroneous and that the overwhelming evidence supports a finding of bad faith. Assuming that the defendants acted in bad faith, the next question to be answered is whether they may be reimbursed for expenditures made in improving the property.

Section 291 (3) of the Restatement (2d), Trusts, allows a transferee of a trustee to recover for expenditures made for improvements. This right is limited, however, to transferees who had no knowledge of the breach of trust. Surely a breaching trustee should stand on no better footing than his transferee who had notice of the breach. We also note that should we require the association to reimburse appellees for improvement expenditures, we might be allowing appellant to be improved out of its property. Nor can we say that appellees are entitled to reimbursement on any theory of restitution. Restitution is required only to the extent that justice between the parties requires: Restatement, Restitution, §158. Here, justice between innocent beneficiaries and defaulting trustees does not require a depletion of the perpetual care fund in order to pay for improvements made without authorization and for the private profit of defaulting trustees. We conclude, therefore, that appellees are not entitled to recover the amounts expended by them in improving the property. We think the rule is to allow reimbursement only where the good faith of the trustees is evident and the benefit to the trust is without doubt; and, to refuse reimbursement otherwise. See, Trusts and Trustees, Bogert, §472 (2d ed. 1960) and cases cited therein.

It also follows that appellant should not be required to bear any portion of the costs of recovering trust property from the breaching trustees.

The decree of the court below is reversed insofar as it requires reimbursement of appellees for expenditures made by them in improving the trust property, and insofar as it imposes any portion of the costs on appellant, and is affirmed in all other particulars.

Costs to be borne by appellees.

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I dissent. I would affirm the decree of the lower Court.