## Ball Estate

Samuel S. Logan, Jr., for Montgomery, McCracken, Walker & Rhoads, for accountants.

Wesley H. Caldwell, guardian and trustee ad litem.

KLEIN, P. J., July 15, 1965.—Thomas H. Ball died on June 18, 1938, leaving a will and codicils by which, inter alia, he devised and bequeathed his residuary estate to his trustees in trust, subject to an annuity of $1,200 a year to his sister, Katharine Ball, who is stated to have died on November 13, 1954, to pay the net income therefrom to his wife, Nina W. Ball, for life, and upon her death to divide the principal into equal shares and hold the same in trust for his three children, to pay them the net income for their respective lives, with gifts over upon their respective deaths, not necessary to recite in this adjudication, as testator's three daughters all appear to be living and of age.

. . .

During the course of administration the trustees held in the trust portfolio shares of common stocks, in varying amounts, of several corporations upon which small stock dividends of six percent or less were issued from time to time. All such stock dividends were retained in principal and are now claimed, in kind, by the executors of the estate of Nina W. Ball, the deceased life tenant.

A summary statement of these dividends and the increments thereon, showing undistributed balances of such dividends covering a period from 1941 to December 31, 1964, the date of accounting, has been submitted by the accountants and is here reproduced:

| Stock | Shares | Cash | Values of Shares as of 4/6/65 |
|---|---|---|---|
| Standard Oil Co. of N. J. | 42 | $ 32.24 | $ 3,312.75 |
| Standard Oil Co. of Cal. | 125 | 155.92 | 8,625.00 |
| First Penna. B. & Tr. Co. | 16 | 63.39 | 502.00 |
| American Elec. Power Co. | 1150 | 113.83 | 51,750.00 |
| Plymouth Oil Co. | 467 42/100 | 15,897.25 | Not Valued |
| | | $16,262.63 | $64,189.75 |

The account discloses that some of the shares of four of the companies held in the trust, viz: Standard Oil Company of New Jersey, Standard Oil Company of California, American Electric Power Company and Plymouth Oil Company, were sold during the accounting period, without indicating whether these shares belonged to income or principal. In their summary, however, the accountants have assumed that all of the shares sold were principal shares and that none were shares which are now claimed to be allocable to income. Because of a rise in prices, the effect of this assumption would now be to increase substantially the amounts payable to the income beneficiaries, at the expense of the trust corpus.

Mr. Caldwell, the guardian and trustee ad litem, objects to this procedure and contends that where income stock was available for sale, each sale made by the trustees during the accounting period must be construed as a sale of income stock and not principal stock. In his report, he outlines what would have occurred if his formula had been adopted and income stock sold first in each instance:

*American Electric Power Company:* The accountants' summary shows that the life tenant's estate is entitled to 1,150 shares and cash of $113.83. These shares are valued as of April 6, 1965, at $51,750. The

account discloses, however, that the trustees sold 306 shares on June 1, 1960, 200 shares on August 10, 1961, 292 shares on September 5, 1961, and 108 shares on September 21, 1961. If income shares had been sold first, the life tenant would be entitled to $34,334.43 as the proceeds of the sale of stock and additional cash of $113.83, or $17,413.57, less than the value listed in the summary.

*Standard Oil Company of New Jersey:* The accountants' summary shows that the life tenant's estate is entitled to 42 shares and cash of $32.24. These shares are valued as of April 6, 1965, at $3,312.75. The account shows that on June 1, 1960, 160 shares were sold. If the 42 shares belonging to income had been sold on that date, the life tenant's estate would be entitled to the proceeds of $1700, or $1,612.75 less than the summary value.

*Standard Oil of California:* The accountants' summary indicates that the life tenant's estate is entitled to 125 shares, having a value of $8,625 on April 6, 1965, and $155.92, in cash. The trustees sold 100 shares on June 1, 1960, at which time they held 84 shares belonging to income. If these shares had been sold on that date the life tenant's estate would be entitled to the proceeds of $3,400, cash of $155.92, and an additional 41 shares received after the sale as dividends. The difference between the sum designated in the accountants' summary and the amount conceded by the guardian is $2,396.

The guardian ad litem is satisfied with the disposition shown in the account with respect to the shares of the Plymouth Oil Company.

The total sum by which principal would be benefited if Mr. Caldwell's position is sustained is $21,424.32.

For many years it was generally believed by the members of the legal profession of this State that the issuance of a stock dividend, regardless of size, consti-

tuted an apportionable event. It was well established, however, that a presumption existed that such dividends belonged to income. Any doubt concerning the question of allocation of small stock dividends was put to rest in Pew Trust, 411 Pa. 96, by the following statement made by Mr. Chief Justice Bell, at page 102:

". . . In all the history of Pennsylvania Rule of Apportionment this Court has never held that stock dividends, up to and including 6%, were apportionable, but on the contrary all such dividends were considered income. Catherwood recognized and confirmed this historical fact. We believe it was not the intent of the Court in the Catherwood decision—but if it was, the dicta in a footnote to that effect is hereby overruled— to abolish the right of a life tenant to *ordinary* stock dividends or ordinary cash dividends in pre-1945 trusts, . . ."

This pronouncement by the highest judicial authority in the Commonwealth is binding upon everyone, including the parties to this litigation. It follows, without need for discussion, that all of the small stock dividends of six percent or less received by the trustees were properly allocable to the deceased income beneficiary. The only question presented for our decision is whether her estate is entitled to stock in kind at present values, or the proceeds of the shares which were sold while she was serving as a trustee.

Counsel for the estate of the deceased life tenant rely primarily upon Steele Estate, 377 Pa. 250 (1954), and Frick Estate, 4 D. & C. 2d 247 (1955), in support of their contention that the estate is entitled to distribution of the small stock dividends in kind.

In Steele Estate, the decedent left in trust stock which constituted the controlling interest in a privately owned corporation engaged in the publishing business. The propriety of awarding to the life tenant a stock dividend of 25 percent issued by the corporation was

questioned because it had a material effect upon the working control of the corporation. No such problem exists in the present case.

In Frick Estate, a trust company was sole trustee. It received stock dividends necessitating an apportionment. The trustee sold some of the stock and the question was raised as to whether the stock sold was from the holdings of income or corpus. The Court ruled that all of the sales must be considered as of corpus and said, page 260:

"The presumption is that the trustee would only do that which he was authorized to do. He had authority to sell corpus stock by virtue of the trust instrument. He had no authority to sell the property of the life tenant."

While the auditing judge has serious doubts concerning this conclusion, it would appear to be immaterial, as there is a marked difference between Frick Estate and the present case.

In Frick Estate, a trust company was acting alone, as sole trustee. In the present case the trust company was appointed to serve jointly as one of five trustees. The other four were testator's widow, who was the primary life tenant, and their three daughters, who were not only succeeding life tenants, but also entitled under the widow's will to her entire estate in equal shares of one third, each. Any benefits flowing to the life tenant's estate will thus enure to the ultimate benefit of her children, the other individual co-trustees.

Under the provisions of both the Fiduciaries Act of June 7, 1917, P. L. 447, and the Fiduciaries Act of April 18, 1949, P. L. 512, where a trust estate is being administered by more than two trustees, the decision of a majority is controlling with respect to all questions affecting the management of the estate.

In the case before us, the determination of what disposition was to be made of the small stock dividends

was within the control and discretion of the life tenant and her three daughters, as they constituted a majority of four of a total of five trustees. The dividends in question were allocable to Nina W. Ball, the life tenant. Instead of making such allocation, she and her co-trustees voluntarily placed them in principal, where they did not belong. When shares of the stock of the corporation which issued these stock dividends were sold by the trustees, we must assume that they sold the shares which were improperly placed in principal and which belonged to the life tenant-trustee.

It is a basic rule of trust administration that a trustee's first obligation is to protect the interest of the trust estate in his care. He has no right to take sides between life tenant and remainderman. If he has an election between several courses of action, he must choose, if possible, that which will not benefit one class of beneficiaries at the expense of another: Thompson's Estate, 262 Pa. 278 (1918). This is particularly so if the trustee, himself, is a beneficiary. Moreover, the prohibition against self-dealing by a trustee is absolute. When a trustee violates it, good faith is not material: Bolton v. Stillwagon, 410 Pa. 618 (1963); Downing Estate, 162 Pa. Superior Ct. 354, 359 Pa. 534 (1948). The conduct of the individual trustees in the present instance has many of the elements of self-dealing. By retaining in principal the stock dividends which clearly belonged to the life tenant, the trustee-beneficiary, was, in effect, speculating on a rise in the stock market for her own benefit. The stock rose in value; hence, the executors of the deceased life tenant's estate are now claiming the gains. Let us assume that the life tenant had received the proceeds of the shares at the time they were sold and that the shares had fallen in value. Would they have volunteered to reimburse the estate for such depreciation? Obviously not.

In the opinion of the auditing judge the estate of

the deceased trustee and the surviving individual co-trustees are now estopped from claiming, in kind, the shares issued to this estate as small stock dividends. They will not be permitted to administer this trust in a manner which serves their own personal interests, at the expense of the remainderman whose rights they are duty bound to protect.

The transfer of stock dividends of six percent or less from principal to income will accordingly be awarded subject to the modifications suggested by the guardian and trustee ad litem, which are adopted by the auditing judge in their entirety. The necessary calculations may be reflected in the schedule of distribution which will be directed to be filed upon approval thereof by Mr. Caldwell, as guardian and trustee ad litem. . . .

And now, July 15, 1965, the account is confirmed nisi.