414 A.2d 1007

**ESTATE of Charles Xavior KNIPP a/k/a C. A. Knipp and Charles A. Knipp, Deceased.**

**Appeal of Sally Ann MICHELFELDER and Joan M. Gonzales, Objectors.**

Supreme Court of Pennsylvania.

Argued April 14, 1980.

Decided May 30, 1980.

510

Donald Hayes, Philadelphia, for appellants.

George M. Brodhead, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal from a decree of the Orphans' Court Division of the Philadelphia Court of Common Pleas which denied a claim for surcharge asserted by certain estate beneficiaries, Sally Ann Michelfelder and Joan M. Gonzales (appellants), against the appellee corporate executor, Central Penn National Bank, for alleged mismanagement of estate investments. After several hearings in the court below on objections filed by appellants, the account was confirmed by the auditing judge and exceptions to his decree nisi were dismissed by the court en banc.[1]

On November 9, 1972, letters testamentary were issued to appellee as executor of decedent's estate. His will created a testamentary trust, the beneficiaries of which included the appellants, and designated appellee to serve as trustee. The estate property included 4314 shares of Sears Roebuck & Co. common stock valued at the commencement of the estate's administration at approximately $470,000, a figure which represented 71% of the estate's total asset value and 97% of the value of all stocks in the estate. Only 400 of the Sears shares were sold by the executor during the first year of administration, the sales being made primarily to cover costs of administration rather than for reinvestment purposes. The will gave appellee, as executor and trustee, an absolute discretionary power either to retain or sell such property. Appellants' surcharge claim was brought because of a very substantial drop in the market price of Sears stock during the period of its being held in trust.

---

1. Objections to the account were also filed by the decedent's widow, who died during the pendency of the proceedings.

■ Appellants' first contention is that the attention, supervision, and group judgment given the investment account by the appellee did not measure up to that required of an expert corporate fiduciary under the rule of *Killey Trust*, 457 Pa. 474, 477–478, 326 A.2d 372, 375 (1974) where we stated:

> [T]he corporate trustee held itself out as an expert in the handling of estate and trust accounts. It represented itself as being possessed of greater knowledge and skill than the average man. It was therefore under a duty to exercise a skill greater than that of an ordinary man and the manner in which investments were handled must accordingly be evaluated in light of such superior skill.

After a thorough review of the record, we find, at least minimally, sufficient evidence to support the conclusion of the court below that the appellee exercised the degree of care, skill, and judgment required of a fiduciary. The testimony included an expert opinion from an investment advisor that appellee's investment practices conformed to generally followed corporate trust standards of skill and prudence. In addition, testimony was presented that appellee utilized respected outside sources of information and advice and closely followed trust account activity by frequent reviews, analyses, and group judgments. The evidence establishes that Sears stock was, during the period in question, reasonably believed to be a sound, national, broadbased stock worthy of investment by a fiduciary.

■ As it turned out, however, performance of the Sears stock was poor: the price per share dropped from $117 at the time of testator's death to approximately $88 by February of 1974 and continued to decline thereafter. Hindsight, however, is not the test of liability for surcharge. *Mereto Estate*, 373 Pa. 466, 96 A.2d 115 (1953). The exercise of investment skills greater than those possessed by the average man, as is required of a corporate fiduciary, which holds itself out as an expert, does not *guarantee* results better than average person may have achieved during the same investment period.

■ On the other hand, we are not prepared to say that authorization to retain assets gives an executor or trustee an absolute and unbridled discretion to sit idly by while those assets depreciate in value. Rather, when challenged, every such administration should be carefully scrutinized to determine whether an expert corporate fiduciary has performed according to the higher standards required of it.

Only recently, in *In re Mendenhall*, 484 Pa. 77, 398 A.2d 951 (1979) Mr. Chief Justice Michael Eagen, in reversing a decision of the Court of Common Pleas of Chester County which had refused to impose a surcharge, said this: "If, on remand, the court determines [that the corporate trustee] failed to use the resources and skills it possessed in administering the Mendenhall trust, a surcharge is justified for any depreciation in the value of principal resulting from the breach of duty."

■ In addition to the heretofore discussed assertion of a lack of attention to the estate account, appellants contend that the trustee's failure to substantially diversify the stock holdings within three months of commencement of administration constituted unskillful and imprudent trust asset management. Where, as in the present case, a testator vests a fiduciary with discretion to retain assets, the fiduciary is not thereby excused from the duty of making the retention decision prudently. *Lentz's Estate*, 364 Pa. 304, 72 A.2d 276 (1950). It is not, however, *per se* imprudent for an executor, vested with absolute discretion to hold property, to refrain from immediately diversifying a large block of stock received at the commencement of administration. In *Saeger's Estates*, 340 Pa. 73, 76–77, 16 A.2d 19, 21–22 (1940), where a surcharge was sought solely on the ground that the trustee had not diversified holdings, we said:

> Nor does it appear that in any case thus far brought before this Court has a trustee been surcharged solely for the reason now urged. In the absence of controlling precedent and particularly in the absence of such requirement in the statutory law relating to the investment of trust funds, we conclude that . . . there is no au-

thority in the law of this State for the doctrine, contended for by appellants, that trust investments, otherwise legal and entirely proper under all the recognized standards, are necessarily improvident per se for any claimed lack of proper diversification.

Although many financial authorities advocate diversity of investment as a desirable course for trust management, a judicial decision declaring non-diversification to be presumptively imprudent would arbitrarily foreclose executors and trustees from opportunities to retain beneficial holdings. The preferable approach, therefore, is to determine on a case by case basis whether the particular investment approach meets the standard in *Killey Trust*, supra. Here we cannot say that the record does not adequately support the determination of the court below that retention of the Sears stock, without diversification, was not imprudent.

Decree affirmed. Each party to pay own costs.

NIX, J., filed a dissenting opinion.

NIX, Justice, dissenting.

In the instant appeal, the corporation fiduciary, appellee, was required to exercise the degree of care in handling the trust investment commensurate with the greater skills it asserted it possessed. While it is true that the corporate fiduciary does not act as guarantor of the investment's success, I do not agree with the majority's conclusion that appellee in the instant appeal "has performed according to the higher standards required of it." (1009). The drop in price per share of the Sears & Roebuck & Co. stock which comprised a large portion of the trust corpus, did not occur suddenly, but rather took place over an extended period of time. From November, 1972 to February, 1974, the price dropped from $117 to $88 per share. Yet, in the face of the steadily increasing losses, the appellee retained the stock continuing to hope for its market recovery. These circum-

stances should have forced the conclusion that some diversification was required to attempt to offset the possible loss.[1]

I therefore dissent.

---

1. Although 400 shares of the Sears stock was sold in the first year of administration, as the majority notes, this was done "primarily to cover costs of administration rather than for reinvestment purposes." (1008).