## In Re: Inter Vivos Schultz Trust

*Christopher Y. Gadsden,* for accountant.
*Alexander Endy,* for settlor.

WOOD, *J.,* December 23, 1981—In early 1975, Rudolph and Anna Schultz, an elderly couple, became interested in certain newspaper advertisements claiming that Girard Bank would take care of their money worries by investing their assets and giving them a steady income for life. The Schultzes contacted Girard and eventually met with a Mr. Cook, an estate planning officer with the bank, on several occasions throughout the last five months of 1975.

From the evidence, it appears that Girard offered assurances of a steady income at a high rate of return on the Schultzes' savings. As the result of these discussions, the Schultzes executed a deed of trust on December 31, 1975, naming Girard as trustee[1] of an inter vivos trust of $44,077.78, representing all of the Schultzes' savings except for their home.

Article 7th of the deed of trust authorized the trustees to invest in all forms of real and personal

---

1. Although the Schultzes were designated as co-trustees, they did not sign the account nor in reality could their desires substantially affect the management of the fiduciary income fund in which their funds were invested.

property. Since the purpose of the trust was to create "a high and steady income", Girard directed the corpus to be invested in its Fiduciary Income Fund, which is one of several common trust funds managed by Girard for its trust customers. Ownership of the fund is divided into units which can only be held by trusts and estates of which Girard is a fiduciary.

The fund's purpose is to create a secure and steady level of income for trust beneficiaries. The capital of the fund is invested in long term bonds.[2]

When the Schultzes got into this fund, fall of 1977, the rate of return was between 7.6 to 7.9 percent. From that point until the present the rate has steadily risen and the fund is now yielding approximately 11 percent. Further from 1976 through 1978, there was a general increase in the unit value of the fund. However, during this entire period and continuing up to the present the interest market is such that short term paper is paying a much higher rate than long term bonds, although of course investing in short term paper would not "lock in" a favorable rate of interest over a long period of time, as is the case with corporate bonds. Thus, although Girard's actions made sense in light of the purpose of the trust, the market value of bonds, and therefore the unit value of the trust, became depressed after 1978 because many investors were putting their money in short term paper. Although the record shows that virtually all of the fund's debt investments would mature at face value, so that the investor would eventually get all his money back, the

---

2. The evidence reveals that during the period in which the Schultzes' trust owned units of the fund, the fund was invested in long term corporate bonds.

interim market value of the bond fell below face value, and often below cost. The net effect was that the value of the Schultzes' investments was reduced. In early 1980, Girard notified all those who were invested in its fiduciary fund that the fund had suffered erosion of principal because of the vagaries of the market. Upon receipt of this information, the Schultzes sought advice and decided to revoke the trust. Girard sold their unit shares at the depressed market rate and as a result the Schultzes got back $9,867.69 in capital less than they put in. Girard then filed its account and we have before us the Schultzes' objections to the account which seek to surcharge Girard for mismanagement of the trust.

We view this case as one between an unsophisticated investor[3] and a bank which holds itself out as having investment resources and skills greater than those possessed by the average man. We think that the manner in which Girard handled the investments must be evaluated in light of such superior skill. Killey Trust, 457 Pa. 474, 326 A.2d 372 (1974). Of course, neither the bank's representations nor its superior investment skills make it a guarantor of its investments: Estate of Knipp, 489 Pa. 509, 414 A.2d 1007 (1980).

In this instance, we think the evidence is clear that Girard acted prudently and fulfilled the prime purpose of the trust. Girard only represented that they could get the Schultzes a secure, steady, and high income for their money. The evidence reveals that Girard invested the fund into high quality bonds which not only yielded a decent rate of return but which would be redeemable at full face value

---

3. Mr. Schultz passed away before the commencement of this action.

upon maturity.[4] We therefore find no breach of the fiduciary duty which Girard owed to the Schultzes. Nor is there any evidence that Girard made any misrepresentations to the Schultzes.

We think that we should also address the question whether or not Girard had any affirmative duty to inform the Schultzes that an increase in interest rates would probably erode the value of the fund corpus. The evidence is conflicting as to whether this was done. The bank's estate planning officer testified that he informed the Schultzes of the fact that the value of the trust corpus would fluctuate. Mrs. Schultz on the other hand could not recall any such caution being made. We are inclined to believe that the bank probably did make such statements to the Schultzes but downplayed them enough so that they did not make much of an impression upon the Schultzes. In the patient/physician area the courts have imposed upon physicians the duty to disclose to the patients all those facts, risks and alternatives that a reasonable man in the patient's situation would deem significant in making a decision to undergo the recommended treatment: DeFulvio v. Holst, 272 Pa. Super. 221, 414 A.2d 1087 (1979). In Malloy v. Shanahan, 280 Pa. Super. 440, 421 A.2d 803 (1980), the Superior Court refused to extend the doctrine of informed consent beyond suits involving surgical operations.

Should we nevertheless, impose upon a bank an obligation to inform investors of all those risks which a reasonable person in the investor's situation would deem significant in making a decision to

---

4. In fact the bonds in which the trust invested during this period did not suffer as great a decrease in value as did U.S. Treasury Bonds and many other corporate and government bonds during the same period.

make a recommended investment? In light of our appellate courts' reluctance to extend the doctrine into other areas, we decline to do so here. We thus relieve ourselves of the burden of deciding whether or not the warnings and disclaimers which Girard gave the Schultzes were adequate to put them on notice of the events which occurred. As a matter of fairness in dealings between unsophisticated investors and those who hold themselves out as experts, we think there should be a minimal obligation to disclose the risks attendant upon various kinds of investments. However, we also think that the job of framing the required disclosures is perhaps a legislative or administrative task, and that we should not at this point hold Girard responsible for failing to live up to a standard which has not yet been articulated.

The Schultzes also seek to surcharge Girard $1,608.67, the amount of the bank's and its attorney's compensation. 20 Pa.C.S. §7185(c) allows compensation to a trustee when expressly provided for by the deed of trust. Article 10th of the Deed of Trust provides for such compensation here. The settlors have produced no evidence that the compensation claimed was unreasonable and thus we must overrule that objection. In fact, in accordance with its fee schedule, Girard only claimed five percent of the income received by the trust. This we believe is reasonable.

With respect to counsel fees, it is clear that they are appropriately awarded to a fiduciary in connection with the filings of an account for audit. Estate of Cohen, 483 Pa. 157, 394 A.2d 958 (1978). Moreover, when a beneficiary unsuccessfully attempts to surcharge a fiduciary, the latter is entitled to an allowance out of the trust to pay for counsel fees and necessary expenditures in defending itself against

the attack: Darreff Estate, 64 D.&C.2d 650 (1973); In Re Davidson's Trust Estate, 354 Pa. 333, 47 A.2d 145 (1946). Thus, the bank is entitled to an allowance out of the trust to pay its counsel fees arising out of the filing of the account and defense of the Schultzes' action. We think $700 is a reasonable fee for the services rendered.

The account shows a remaining balance of principal and income of $9,867.69 composed as indicated therein. Subject to the counsel fee approved above, the net ascertained balances are awarded as set forth in the last paragraph of the petitition for adjudication. The accountant shall file a schedule of distribution.

All of the above awards are subject to the payment of any costs due the clerk of the orphans' court division in connection with this adjudication.

The account is confirmed and, after oral argument and upon consideration of briefs, the settlor's objections thereto are dismissed. It is hereby ordered and decreed that Girard Bank, Trustee, shall forthwith make the distributions herein awarded.

## ORDER

And now, this December 23, 1981, this adjudication is confirmed nisi.