UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

TIFFANY S. STOPPER, as Beneficiary
and Successor Co-Trustee of the
Irrevocable Trust Agreement of
John M. Stealey and Laura M.
Stealey dated December 25, 1995,
*Plaintiff-Appellant,*

v.

DAVID H. KESTEL,
*Defendant-Appellee.*

No. 00-2204

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Frederic N. Smalkin, District Judge.
(CA-00-1664-S)

Argued: May 10, 2001

Decided: June 15, 2001

Before LUTTIG, MOTZ, and TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Russell Jay Pope, POPE & HUGHES, Towson, Maryland, for Appellant. Roger Warren Titus, VENABLE, BAETJER & HOWARD, L.L.P., Rockville, Maryland, for Appellee. **ON BRIEF:** Michael S. Barranco, POPE & HUGHES, Towson, Maryland, for

Appellant. Kathleen E. Wherthey, VENABLE, BAETJER & HOW-ARD, L.L.P., Rockville, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Tiffany S. Stopper ("Stopper"), beneficiary of an irrevocable trust (the "Trust"), sued David H. Kestel ("Kestel") for breach of fiduciary duty and gross negligence in his performance as trustee. For the reasons set forth below, we affirm the district court's grant of summary judgment to Kestel.

I.

Stopper's parents, John M. Stealey ("Stealey") and his then-wife Laura Stealey, created separate irrevocable trusts for the benefit of their three children in 1995. Each trust's corpus consisted entirely of stock in a new company founded by Stealey (the "Stealey stock"). Stealey made Kestel, his estate planning consultant, the trustee for each of the trusts.[1] Each Trust Agreement authorized Kestel to "retain any and all property received [from the settlor] until such time as he may deem it desirable to sell or otherwise dispose of the same." J.A. 16.

Pursuant to an initial public offering ("IPO"), the Stealey stock began trading on the NASDAQ at $8.00 per share on July 22, 1998, and was at $14 per share on the second day of trading. As part of the IPO, Kestel signed a lock-up agreement with the underwriter, in his individual capacity as director, agreeing not to "sell, offer for sale,

_____

[1]Stealey invited Kestel to become a member of the Board of Directors of his company in February 1997.

transfer, assign, pledge, hypothecate or otherwise dispose of, any securities of the company owned by the undersigned, pursuant to Rule 144 promulgated under the Securities Act of 1933," for nine months.[2] J.A. 155, 157-58. During the lock-up period, the Stealey stock price plummeted.

As the Stealey stock fluctuated between $0.625 and $2.50 per share after the lock-up agreement ended, Stopper pressured Kestel to sell the Stealey stock in her Trust. Kestel refused, stating that in his opinion that stock was undervalued and would appreciate. Kestel told Stopper that it was his duty to hold the stock until it rose to its true value, which was at least $3.00 per share. J.A. 158.

Faced with Stopper's continued pressure to sell the Stealey stock, Kestel resigned from his position as trustee for her Trust in October 1999. However, Kestel continued to serve as trustee for the trusts established for the benefit of Stopper's siblings. The Stealey stock in Stopper's Trust was sold by the successor trustee for $0.86 per share in late October 1999, at Stopper's request.[3]

Stopper then filed suit against Kestel, alleging that he breached his fiduciary duty in failing to diversify the portfolio and liquidate the Stealey stock held in the Trust, J.A. 8, and that he was grossly negligent in consciously and deliberately disregarding the risks of the "unitary investment in" the Stealey stock. J.A. 9. Applying Pennsylvania law, the district court granted Kestel's motion for summary judgment, and this appeal followed.

## II.

The standard for imposing liability on a trustee who is authorized to retain investments has long been clearly established: While "authority to retain investments [does] not justify holding without attention," a "trustee will not be held personally liable for an honest

---

[2]*See also* 17 C.F.R. § 230.144(a)(2)(ii) (defining application of restriction under section 144 of the Securities Act of 1933 to include any trust of which a covered person serves as trustee).

[3]In contrast, Kestel sold Stealey stock held under the siblings' trusts for more than $4.00 per share during the first quarter of 2000.

exercise of a discretionary power, in the absence of supine negligence or willful default." *In re: Mereto's Estate*, 96 A.2d 115, 116 (Pa. 1953) (citations omitted). Moreover, the Trust Agreement itself provides that Kestel, "while acting in good faith, shall not be liable or held responsible for any loss or depreciation in the value of any trust created hereunder, but shall be liable only for loss resulting from his own *willful default* or *gross negligence*." J.A. 162 (emphasis added). *See also* 20 Pa. Cons. Stat. Ann. § 7319(a) (providing that the liability prescribed by the trustee in the trust instrument "shall control notwithstanding this chapter"). To constitute gross negligence, "the behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." *Bloom* v. *DuBois Reg. Med. Ctr.*, 597 A.2d 671, 679 (Pa. Super. Ct. 1991).

While Stopper argues that Kestel's failure to diversify the trust portfolio constitutes gross negligence, Appellant's Br. at 17, we are aware of no case holding that it *per se* constitutes negligence, let alone gross negligence, for a trustee to retain stock in a new company, even a new company engaged in a highly competitive industry. Nor was Kestel required to diversify trust investments under Pennsylvania law. *See Estate of Knipp*, 414 A.2d 1007, 1009 (Pa. 1980) (holding that non-diversification is not presumptively imprudent).

More importantly, Stopper neither provided nor proffered any evidence that: (1) the Stealey stock was *not* undervalued at the time Kestel refused to sell it; (2) Kestel acted in bad faith; or (3) Kestel acted with indolence, "supine negligence or willful default," *In re: Mereto's Estate*, 96 A.2d at 116. Indeed, the uncontroverted record evidence is that Kestel exercised his discretion and refused to sell the Stealey stock, despite Stopper's demands, because he believed the stock was undervalued — a decision that was vindicated by subsequent events. *See supra* at 3 n.3. Further, because the Stealey stock was the only Trust asset, in order to diversify Kestel would have had to sell the stock when he believed it was undervalued — in violation of his fiduciary duties.

After considering the parties' briefs, the oral arguments of counsel, and the joint appendix, we are persuaded that the district court reached the correct result because Kestel's actions "fell far short of gross negligence," the standard of liability selected by the trust settlor,

and we affirm the judgment of the district court on that ground.[4] J.A. 247. We also agree with the district court that Kestel did not otherwise breach his fiduciary duties and, having considered Stopper's other arguments, we affirm the grant of summary judgment to Kestel on that claim on the reasoning of the district court.

*AFFIRMED*

---

[4]Thus, we need not decide the extent to which the obligation to exercise "due care and prudence in the performance of [Kestel's] duties," 20 Pa. Cons. Stat. Ann. § 7302(a), was, or was not, modified by the Trust Agreement's retention clause.